Argued and submitted March 23, conviction for identity theft reversed;
remanded for resentencing; otherwise affirmed June 15, 2011

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KEVIN MICHAEL MARTIN,
*Defendant-Appellant.*

Multnomah County Circuit Court
081235508; A143581

260 P3d 197

Bronson D. James argued the cause for appellant. With him on the brief was Bronson James, LLC.

Andrew M. Lavin, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and David B. Thompson, Interim Solicitor General.

Before Brewer, Chief Judge, and Edmonds, Senior Judge.

EDMONDS, S. J.

**EDMONDS, S. J.**

Defendant appeals a judgment convicting him of second-degree burglary, ORS 164.215(1); first-degree criminal mischief, ORS 164.365(1); and identity theft by possessing the personal identification of another person, ORS 165.800(1). On appeal, he assigns error to the trial court's denial of his motions for judgment of acquittal with regard to the burglary and identity theft charges. As to each charge, he challenges the sufficiency of the evidence regarding his mental state. We affirm as to the burglary conviction but reverse as to the identify theft conviction.

City of Portland police officers responded to a silent alarm at Point West Credit Union on Northeast 12th and Irving Streets at approximately 5:00 a.m. on November 9, 2008. When they arrived at that location, one of the officers discovered defendant crouching in shrubbery adjacent to the credit union building. Defendant told the officers that he was walking home from downtown Portland to Vancouver, Washington, and that he had stopped to urinate in the bushes in which the officers found him. Defendant was covered in drywall dust and had scratches on his arms and hands. The officers and a credit union representative discovered broken windows and a door with a glass window broken in the back of the credit union building along with a large rock that was nearby. There also appeared to be damage to the drywall surrounding the door. Defendant was arrested for trespass and transported to a jail facility.

After being transported, defendant was booked into the facility. During the booking process, the officer performing an inventory of defendant's personal effects found an Oregon DMV identification card containing the name of another individual, in addition to the identification that defendant had furnished to the officer. The officer asked defendant why he had someone else's identification. Defendant responded that "he had found a wallet." However, he refused to tell the officer where he had found the wallet or where it was at the time of their conversation. The identification card includes a picture of a white male about the approximate age and height as defendant, who also is a white male.

Later, the police obtained a surveillance video from the credit union that showed a person breaking into the credit union who had lifted the collar of his coat up onto the top of his head so as to conceal his identity. The subsequent police investigation revealed that defendant had spent at least 15 minutes at the location of the credit union and that he had minor cuts on his hands consistent with penetrating a broken window. The rock found at the scene appeared to match the pattern of broken glass and had fresh marks on it. Additionally, a tree branch was found at the scene of the broken glass.

Defendant pleaded not guilty to the above charges. At trial, the burglary and criminal mischief charges were tried to a jury, which found defendant guilty of both. As to the identity theft charge, defendant waived a jury and was convicted after a trial to the court. This appeal ensued.

In his first assignment of error, defendant argues that the trial court should have granted his motion for judgment of acquittal on the burglary charge because, in his view, the state presented insufficient evidence of his intent to commit theft from the credit union. Relying on *State v. Stilling*, 285 Or 293, 299, 590 P2d 1223, *cert den*, 444 US 880 (1979) (quoting *Colson v. Cupp*, 449 F2d 730, 731 (9th Cir 1971)), defendant asserts that, " '[w]hen the [un]lawfulness of an act depends upon the guilty intent with which the act was done, it is patently wrong to tell a jury that it can infer the requisite intent simply from proof that a defendant did the act.' " In defendant's view, the jury could have only impermissibly speculated about his intent to commit the crime of theft based on his presence at the scene.

We review the trial court's ruling denying defendant's motion for judgment of acquittal to determine whether, viewing the evidence in the light most favorable to the state, a rational trier of fact could have inferred from the evidence an essential element of second-degree burglary— that defendant intended to commit the crime of theft when he entered the credit union. *See State v. Cervantes*, 319 Or 121, 125, 873 P2d 316 (1994).[1] Our review is not for whether we

---

[1] ORS 164.215(1) provides that "a person commits the crime of burglary in the second degree if the person enters or remains unlawfully in a building with intent to commit a crime therein."

believe that defendant is guilty beyond a reasonable doubt but rather whether the evidence is sufficient for a jury to have so found. *State v. Krummacher*, 269 Or 125, 137-38, 523 P2d 1009 (1974). That issue is governed by the following principles:

> "In establishing [an] element, the state may rely on circumstantial evidence and reasonable inferences flowing from that evidence. An inferred fact must be one that the jury is convinced follows beyond a reasonable doubt from the underlying facts. But the requirement that the jury be convinced beyond a reasonable doubt does not mean that a particular inference must inevitably follow from the established facts. Rather, the established facts may support multiple reasonable inferences and, if they do, which inference to draw is for the jury to decide.
>
> "Whether particular circumstantial evidence is sufficient to support a particular inference, however, is a legal question for a court to decide. 'There is a difference between inferences that may be drawn from circumstantial evidence and mere speculation.' *State v. Vaughn*, 175 Or App 192, 201, 28 P3d 636 (2001). Reasonable inferences are permissible; speculation and guesswork are not. As we have observed before, the line between permissible inferences and impermissible speculation is 'sometimes faint.' *Hutchinson and Hutchinson*, 187 Or App 733, 741, 69 P3d 815 (2003). The line is also sometimes difficult to articulate with precision. But we agree with the federal courts, which frequently describe it in these terms:
>
>> " 'The line between a reasonable inference that may permissibly be drawn by a jury from basic facts in evidence and an impermissible speculation is not drawn by judicial idiosyncrasies. The line is drawn by the laws of logic. If there is an experience of logical probability that an ultimate fact will follow a stated narrative or historical fact, then the jury is given the opportunity to draw a conclusion because there is a reasonable probability that the conclusion flows from the proven facts. * * *'
>
> "*Tose v. First Pennsylvania Bank, N.A.*, 648 F2d 879, 895 (3d Cir), *cert den*, 454 US 893 (1981)."

*State v. Bivins*, 191 Or App 460, 466-67, 83 P3d 379 (2004) (citations omitted).

Applying the above principles and in light of the circumstances surrounding defendant's attempt to enter the credit union, we conclude that the state presented legally sufficient evidence from which the jury could logically infer beyond a reasonable doubt that he intended to commit the crime of theft from the credit union. Those circumstances include the financial nature of the credit union's operations, the actions that defendant undertook to gain entry, his attempt to hide from the officers who responded to the alarm, and his effort to hide his face from the credit union's surveillance camera. In other words, the trial court did not err when it denied defendant's motion for judgment of acquittal on the burglary charge.

In his second assignment of error, defendant raises an argument that is similar to the argument made under his first assignment and that is also governed by the above legal principles. Defendant moved for a judgment of acquittal as to the identity theft charge in the trial court on the ground that the state failed to introduce sufficient evidence of his intent to commit identity theft. The trial court denied defendant's motion, and he reiterates on appeal the argument made to the trial court. In substance, he argues that the evidence of his mere possession of another person's identification card is insufficient to give rise to a reasonable inference that he possessed the card with the intent to commit the crime of identity theft. A person commits the crime of identity theft under ORS 165.800(1) when the person, "with the intent to deceive or to defraud, obtains, possesses, transfers, creates, utters or converts to the person's own use the personal identification of another person."

The state appears to concede that defendant's possession of the personal identification of another person is not by itself legally sufficient to demonstrate his intent to deceive or defraud. Additionally, it relies on his explanation as to why he was in possession of the card and his failure to account for the whereabouts of the wallet in which he claimed he had found the card. Also, the state points to the fact that the picture on the card is a picture of a person about the approximate age and height as defendant.

The state's argument fails to withstand scrutiny under the above legal principles. Generally, proof of a defendant's mental state focuses on inferences drawn from evidence concerning the acts of the defendant as they relate to the "action" element of the offense. *State v. Beason*, 170 Or App 414, 425-26, 12 P3d 560 (2000), *rev den*, 331 Or 692 (2001). Here, the "action" element of the offense with which defendant is charged is his possession of the card at the time of his arrest. Defendant's mere possession of the card is not by itself probative of an intent to use the card to deceive or defraud. Moreover, defendant was under no legal obligation to explain further his possession of another person's identification card to the police, and his disclosure that he had found the card in a wallet that had been lost implies no criminal wrongdoing on his part. The state also points to the fact that the card was loose in his pocket rather than in a wallet and to the fact that he had refused to disclose the whereabouts of the wallet. In addition, the state relies on the fact that the picture of the person on the identification card is of a white male about the approximate age and height as defendant. However, those facts, whether considered individually or together with all the other circumstances in this case, do not rise to the level of an inference beyond a reasonable doubt that defendant intended to use the card to deceive or defraud another at the time that he possessed it. Rather, they require a factfinder to speculate as to what action, if any, that defendant might take with the card in the future. It follows that the trial court erred when it denied defendant's motion for a judgment of acquittal on the identity theft charge.

Conviction for identity theft reversed; remanded for resentencing; otherwise affirmed.