Argued and submitted February 12, Springfield High School, Springfield, reversed September 17, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MICHAEL ALAN COOK,
aka Michael Allen Cook,
*Defendant-Appellant.*

Multnomah County Circuit Court
120747890; A152843

335 P3d 846

Rond Chananudech, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Peenesh H. Shah, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

HADLOCK, J.

Sercombe, P. J., dissenting.

## HADLOCK, J.

Defendant appeals a judgment of conviction for possession of a burglary tool—a crime that he was charged with having committed by possessing a burglary tool or theft device "with intent to use it to commit and facilitate a theft by physical taking" in violation of ORS 164.235(1). The tool consisted of multiple spark plugs that had been attached to a handle and "intertwined" in a way that made them suited to breaking car windows. We address a single issue on appeal: whether evidence that defendant possessed that tool, which he believed was illegal to possess, is sufficient to support a finding that he intended to use the tool to commit a theft by a physical taking. We conclude that the evidence of intent is insufficient in this case. Consequently, the trial court erred when it denied defendant's motion for judgment of acquittal. We therefore reverse.[1]

Because we are reviewing the trial court's denial of a motion for judgment of acquittal, we set forth the facts in the light most favorable to the state. *State v. Evans*, 161 Or App 86, 88-89, 983 P2d 1055 (1999). Two police officers were patrolling Northwest Portland "to try to stop the drug flow, the bicycle thefts, and the car prowling" in that area. One of those officers, Yakots, was familiar with defendant and spotted him standing on a public sidewalk close to the transient camp where he lived. Yakots knew that defendant "associates with car prowlers" and that "where he lives * * * is filled with people who steal bikes and prowl cars." Yakots called out to defendant by name and asked if he could search him. Defendant replied, "Sure, but hang on." Defendant quickly turned and stepped away from Yakots, grabbed an object from his pocket, and threw it under a nearby tarp that was stretched from the top of a chain-link fence over a public sidewalk. Yakots could see the object from where he was standing on the sidewalk and "recognized it immediately" as an "intertwined" tangle of spark plugs attached to a handle, which can be used to break car windows and which, in Yakots's view, has no legitimate use. Yakots took

---

[1] Defendant also assigns error to the trial court's denial of his motion to suppress. Because his first assignment of error is dispositive, we need not address that additional assignment of error.

defendant into custody and retrieved the spark-plug tool from underneath the tarp.

As noted above, defendant was charged with possession of a burglary tool "with intent to use it to commit and facilitate a theft by physical taking" under ORS 164.235(1). Before trial, defendant moved to suppress the evidence (the tool) that Yakots had obtained by reaching under the tarp. At the hearing on defendant's motion, the trial court heard Yakots testify to the facts described above, and it denied the motion to suppress. The case proceeded to a bench trial immediately after that ruling. The trial court admitted the pertinent evidence from the suppression hearing as evidence for purposes of trial and then heard additional testimony from Yakots, who described the spark-plug tool in more detail, noting that it is "[v]ery, very, very light"—not heavy enough to use as a weapon. Yakots also testified that defendant admitted, after having *Miranda* warnings read to him, that he had thrown the intertwined spark plugs under the tarp because "they were illegal." The trial court denied a motion for judgment of acquittal that defendant made at the close of the state's case, and it subsequently convicted defendant of the charged crime.

On appeal, the parties renew the arguments they made below in association with defendant's motion for judgment of acquittal. Defendant acknowledges that the state presented sufficient evidence to establish that the modified spark plugs formed a burglary tool, in that they were "adapted or designed for committing or facilitating a *** theft by a physical taking." ORS 164.235(2). However, defendant argues, the state failed to produce evidence that he possessed the spark plugs with the *intent* to use that tool to commit a theft. The state responds that the trial court properly denied defendant's motion for judgment of acquittal because the record contains sufficient evidence from which a factfinder could reasonably infer the requisite intent.

When reviewing an order denying a motion for judgment of acquittal, we "view the evidence in the light most favorable to the state, giving the state the benefit of all reasonable inferences that may properly be drawn from

that evidence, to determine whether any rational trier of fact could have found the essential elements of the offenses beyond a reasonable doubt." *State v. Miller*, 196 Or App 354, 356, 103 P3d 112 (2004), *rev den*, 338 Or 488 (2005) (citations omitted). Our review is not for whether *we* believe that defendant is guilty beyond a reasonable doubt, but rather whether the evidence is sufficient for a factfinder to have so found. *State v. Martin*, 243 Or App 528, 531-32, 260 P3d 197 (2011). The state "may rely on circumstantial evidence and reasonable inferences flowing from that evidence" to establish any element of a charged crime, including intent. *State v. Bivins*, 191 Or App 460, 466, 83 P3d 379 (2004). Moreover, "established facts may support multiple reasonable inferences and, if they do, which inference to draw is for the jury to decide." *Id.* at 467.

> "Whether particular circumstantial evidence is sufficient to support a particular inference, however, is a legal question for a court to decide. 'There is a difference between inferences that may be drawn from circumstantial evidence and mere speculation.' Reasonable inferences are permissible; speculation and guesswork are not. As we have observed before, the line between permissible inferences and impermissible speculation is 'sometimes faint.' The line is also sometimes difficult to articulate with precision. But we agree with the federal courts, which frequently describe it in these terms:

>> " 'The line between a reasonable inference that may permissibly be drawn by a jury from basic facts in evidence and an impermissible speculation is not drawn by judicial idiosyncrasies. The line is drawn by the laws of logic. If there is an experience of logical probability that an ultimate fact will follow a stated narrative or historical fact, then the jury is given the opportunity to draw a conclusion because there is a reasonable probability that the conclusion flows from the proven facts. ***'

> "*Tose v. First Pennsylvania Bank, N.A.*, 648 F2d 879, 895 (3d Cir), *cert den*, 454 US 893 (1981)."

*Id.* at 467 (citations and footnote omitted).

Applying those principles to this case, we conclude that the state did not present evidence legally sufficient to support an inference, beyond a reasonable doubt, that

defendant had the requisite intent that is an element of the crime of possession of burglary tools.

ORS 164.235(1) provides, in relevant part

"A person commits the crime of possession of a burglary tool or theft device if the person possesses a burglary tool or theft device and the person:

"(a) Intends to use the tool or device to commit or facilitate a forcible entry into premises or a theft by a physical taking[.]"

"Burglary tool or theft device" is defined as

"an acetylene torch, electric arc, burning bar, thermal lance, oxygen lance or other similar device capable of burning through steel, concrete or other solid material, or nitroglycerine, dynamite, gunpowder or *any other explosive, tool, instrument or other article adapted or designed for committing or facilitating a forcible entry into premises or theft by a physical taking.*"

ORS 164.235(2) (emphasis added). "Intent" means that "a person acts with a *conscious objective* to cause the result or to engage in the conduct so described." ORS 161.085(7) (emphasis added). Accordingly, a factfinder could convict defendant of the charged crime only if the state proved, beyond a reasonable doubt, both that (1) defendant possessed a burglary tool or theft device, and (2) defendant had the conscious objective to use the burglary tool or theft device to commit or facilitate a theft by a physical taking. The parties' dispute focuses on whether the state adequately proved the second element, related to defendant's intent.

In considering the sufficiency of the evidence of intent, we begin by examining three identity-theft cases cited by the parties. The state relies on *State v. McAtee*, 245 Or App 233, 235-37, 261 P3d 1284 (2011), where the issue was whether evidence that the defendant took the victim's wallet out of her bag, took her identification card and credit card out of the wallet, and then threw away the wallet and the rest of its contents was sufficient to prove that the defendant acted "with the intent to deceive or to defraud," as required by ORS 165.800(1). An officer had testified that possession of both the identification card and the credit

card enabled "the rapid theft of another's identity." *Id.* at 238. We concluded that the evidence was sufficient to prove intent beyond a reasonable doubt because the "defendant's actions show[ed] more than mere possession of items that could be used with criminal intent." *Id.* The facts in that case allowed "a logical inference that [the] defendant made a deliberate choice to steal and keep only those items that would be useful for identity theft and that he did so with the intent to use the information to deceive or defraud." *Id.* In a similar identity-theft case—also relied upon by the state— we concluded that the state adequately proved the defendant's intent to deceive or defraud through evidence that the defendant "entered a private office, rummaged through a desk in that office, and stole five credit cards [labeled with the names of four different employees], two checks [taken from the middle of a checkbook that had been hidden under other papers in a desk drawer], and a personal digital assistant (PDA)." *State v. Elliott*, 249 Or App 208, 209, 275 P3d 184 (2012). Again, given the evidence that the defendant stole *only* materials that could be used for identity theft, we concluded that the state had adequately proved that he intended to deceive or defraud. *Id.* at 212.

By contrast, in *Martin*, an identity-theft case on which defendant relies, we concluded that the evidence was not sufficient to prove intent to deceive or defraud. In that case, the defendant was found to possess another person's identification card and stated that he had found the card in a wallet but refused to account for the wallet's whereabouts. 243 Or App at 530. In addition, the person pictured on the identification card looked similar to the defendant. *Id.* We concluded that the evidence was not sufficient to support an inference that the defendant's possession of another person's identification card indicated intent to use the card to deceive or defraud. *Id.* at 534. Instead, we held, the evidence would "require a factfinder to speculate as to what action, if any, [the] defendant might take with the card in the future." *Id.*

Comparing the facts in those three cases to the facts in this case, we reject the state's contention that this case is more like *McAtee* and *Elliott*. In both of those identity-theft cases, the state proved that the defendants had *stolen* credit cards and other documents, not merely possessed them.

The defendants' deliberate theft of specific documents that would aid a person in committing identity theft supported the inference that those defendants intended to *use* the documents to deceive or defraud the victims.

Here, no analogous circumstances suggest that defendant intended to use the modified spark plugs to commit a theft. For example, the record does not reflect that defendant obtained the spark plugs in a way that, by itself, suggested he intended to use them to commit a crime. Nor does the record reflect that defendant was located near parked cars when the officer encountered him, that any car prowls or other thefts had just occurred in that area,[2] that defendant was engaged in any conversation or activity that suggested he planned to commit a theft, or that defendant had collaborated with other residents of the transient camp to commit other crimes in the past.

Instead, we conclude that this case is more closely analogous to *Martin*, because the record includes little evidence of intent other than defendant's possession of the item at issue. Here, the additional facts that the state relies on beyond the mere evidence of possession of the modified spark plugs are too few and too limited to support the inference that defendant intended to use the modified spark plugs to commit a theft by physical taking. First, the state points to the fact that defendant did not explain why he had the modified spark plugs. However, defendant was under no legal obligation to explain his possession of the modified spark plugs to the police. *Martin*, 243 Or App at 534. Second, the state points to defendant's attempt to hide the modified spark plugs from the officers because he believed "they were illegal." However, defendant's understanding that spark plugs may be used for illegal activity or his belief that they may be illegal to possess does not support an inference that defendant *intended* to use the spark plugs to commit a theft. A defendant's knowledge that an item may be put to unlawful use is not sufficient to establish that the defendant intended

---

[2] Although Yakots testified that he and another officer were patrolling Northwest Portland to try to stop crimes, including "car prowling," that occurred in that area, Yakots did not describe how large an area the officers were patrolling or any specific relationship between the location of their encounter with defendant and the area or areas in which car prowls had occurred.

to use it in that manner. *See State v. Moreno*, 197 Or App 59, 65, 104 P3d 628 (2005) (evidence that a defendant stole a methamphetamine precursor substance and knew what it could be used for was insufficient to show either that he intended to manufacture methamphetamine himself or— even given his "admission that he hoped to sell the [precursor substance] on the street for money"—that he intended to aid another person's manufacture of the drug).

Finally, the state points to the evidence that defendant associates with car prowlers and that the transient camp where defendant lived was "filled with people who steal bikes and prowl cars." Without some evidence suggesting defendant's actual or planned collaboration in such activities, however, that "guilt by association" argument amounts to a plea for speculation about defendant's intent to commit a theft, not a basis upon which a factfinder logically could infer that mental state. And this record includes no evidence that defendant was acting in concert with either his associates or fellow transient-camp residents to break into cars. *See, e.g., State v. Johnson*, 186 Or App 186, 193, 62 P3d 861 (2003) (mere fact that a defendant knew a person who had pleaded guilty to possession of marijuana is "hardly a basis on which one reasonably could conclude" that the defendant was growing marijuana with that person); *State v. Embry*, 45 Or App 41, 46, 607 P2d 224 (1980) ("Defendant's mere presence at the scene of illegal activities and propinquity to others independently suspected of criminal activity, without more, are insufficient to give rise to probable cause." (Internal quotation marks and citation omitted.)).

In sum, the evidence described above is insufficient to support an inference beyond a reasonable doubt that defendant intended to use the spark plugs to commit a theft by physical taking at the time that he possessed them. Such a conclusion would be based on impermissible speculation, not "an experience of logical probability that an ultimate fact," *i.e.*, inteb nt to commit a theft, "will follow a stated narrative or historical fact," *i.e.*, possession of the modified spark plugs under the circumstances described above. *Bivins*, 191 Or App at 467 (internal quotation marks and citation omitted).

Taking a somewhat different tack, the state also argues that, when a "violation is premised on possession of an item with no legitimate use," then the "circumstantial evidence of intent may well be the lack of legitimate uses. Under the reasoning of *McAtee* and *Elliott,* possession of a burglary tool that has no legitimate use amounts effectively to a *per se* violation of ORS 164.235." In effect, the state asks us to conclude that a factfinder could infer the requisite "conscious objective," ORS 161.085(7), to use the spark plugs to commit or facilitate a theft by physical taking solely because that burglary tool has no legitimate use or purpose.

We reject that argument because it would have the effect of collapsing the intent element of the crime into the possession element. The definition of "burglary tool or theft device" in ORS 164.235(2) describes two basic types of objects: (1) objects that have legitimate uses but that may also be used to commit a theft (*e.g.*, acetylene torches, nitroglycerine, or gunpowder); and (2) any other "explosive, tool, instrument or other article" that has been *"adapted or designed* for committing or facilitating" a theft or forcible entry. (Emphasis added.) The state may be able to offer evidence that the latter type of object—that is, one designed or adapted specifically for use as a burglary tool—has, as with the spark-plug tool, no noncriminal use. But even with respect to that kind of burglary tool, the legislature has specifically provided that a person is not guilty of the crime of "possession of a burglary tool or theft device" unless the person *intends* to use the tool to commit a theft or forcible entry. ORS 164.235(1)(a). Bluntly, the legislature has *not* chosen to make possession of any kind of burglary tool a *per se* violation of the statute, as the state contends. Rather, proof of intent to use the burglary tool to commit a theft is required, and the state cannot prove that element of the crime simply by proving the other element, *i.e.*, the fact of possession. *See Moreno,* 197 Or App at 64-65 (evidence that the defendant possessed stolen pseudoephedrine that he knew could be used to manufacture methamphetamine did not support inference that the defendant intended to manufacture methamphetamine, even though the record also included evidence that the quantity of pseudoephedrine that the defendant possessed had no other street use).

In short, we find that the record does not include evidence sufficient to support a finding, beyond a reasonable doubt, that defendant intended to use the modified spark plugs to commit a theft by physical taking. It follows that the trial court erred when it denied defendant's motion for a judgment of acquittal.

Reversed.

**SERCOMBE, P. J.,** dissenting.

The issue in this case is whether the trial court erred in denying defendant's motion for a judgment of acquittal on the count of possession of a burglary tool or theft device, ORS 164.235(1).[1] Defendant was accused of possessing a theft device. The device consisted of a number of spark plugs intertwined together and attached to a handle. The spark plugs were grouped in a way that made the device suited to breaking car windows in order to gain entry to the car to steal items. The device was suited to little else.

The specific question on appeal is whether the state presented sufficient evidence to create a jury question on whether defendant intended to use the device to commit a theft by a physical taking. The majority concludes that the state did not rise to that task and that, accordingly, the court should have granted defendant's motion for a judgment of acquittal. The majority reasons that mere possession of a theft device is insufficient by itself to support an inference that the possessor intends to use the device to steal something. I agree that that proposition is supported by our

---

[1] As noted by the majority, ORS 164.235(1) provides, in part:

"A person commits the crime of possession of a burglary tool or theft device if the person possesses a burglary tool or theft device and the person:

"(a) Intends to use the tool or device to commit or facilitate a forcible entry into premises or a theft by a physical taking[.]"

"'[B]urglary tool or theft device'" is defined as

"an acetylene torch, electric arc, burning bar, thermal lance, oxygen lance or other similar device capable of burning through steel, concrete or other solid material, or nitroglycerine, dynamite, gunpowder or *any other explosive, tool, instrument or other article adapted or designed for committing or facilitating a forcible entry into premises or theft by a physical taking.*"

ORS 164.235(2) (emphasis added). Intent means that "a person acts with a conscious objective to cause the result or to engage in the conduct so described." ORS 161.085(7) (defining "intentionally" and "with intent").

case law on intent to commit analogous crimes. *See State v. Martin*, 243 Or App 528, 260 P3d 197 (2011) (possession of another's identification card is insufficient, by itself, to prove that the defendant acted "with the intent to deceive or to defraud" under ORS 165.800(1), the statute defining the crime of identity theft); *State v. Moreno*, 197 Or App 59, 104 P3d 628 (2005) (evidence of a knowing possession of a precursor substance is insufficient by itself to prove an intent to manufacture methamphetamine).

But I do not understand the majority to take the position that the factfinder cannot consider the nature of the device in determining whether defendant intended to use that device to commit theft. Many of the other devices mentioned in ORS 164.235(2)—*e.g.*, dynamite or gunpowder—have a range of perfectly legal uses, so it will often be the case that a person possesses those objects without any intent to commit theft. That is not so for a theft device that is principally or exclusively "designed for committing or facilitating a * * * theft by a physical taking." Why else would a person ordinarily keep such a device in his or her possession?[2] With a device like the one here, very little corroborating evidence of intent is necessary to create a question for the factfinder as to whether a defendant intended to use that device to commit theft.

Whether or not the majority shares that view, it ultimately concludes that "the record includes little evidence of intent other than defendant's possession of the item at issue." 265 Or App at 512. That is the point where I differ from the majority. Defendant was carrying the theft device on a street sidewalk at 19th and Savier, in an area under particular police scrutiny for "car prowling." He inferentially was holding that device near parked and unoccupied motor vehicles. No further preparation was needed to commit the

---

[2] There may be some rare circumstances where a defendant possesses such a device but does not intend to use it for its designed purpose. For example, it is possible that a person (say, an artist working with found industrial objects) might possess a device like the one here without knowing of its intended use. Or a person who knows of the device's use might hold onto it so that he can later sell it to someone who would commit theft. For those reasons, there must be some corroborating evidence of a defendant's intent beyond the fact that the only plausible use of the device is to commit theft.

crime of theft by physical taking other than to approach a car and swing the device.

More to the point, defendant admitted that he was up to no good. Defendant admitted that he threw the intertwined spark plugs under the tarp because "they were illegal." Whether or not defendant thought it was illegal to simply possess the spark plug device, his admission that his association with that device was "illegal" betrayed, at the least, knowledge of the device's only plausible (and illegal) use. And defendant threw the device away from him to hide it from the police. That act showed defendant's intent to obstruct justice or avoid punishment.[3]

In sum, defendant was found in an area where car prowls and thefts were common, and he was staying at a camp with other car prowlers. By his comments after the police approached, defendant showed that he very well knew that this device was used to illegal ends. And by his attempt to discard the spark plugs, defendant showed that he associated himself with that illegality. Where, as here, the device that defendant possessed had no plausible use other than to commit theft, the factfinder need not resort to "too great an inferential leap" or a "stacking of inferences" to conclude that defendant intended to use the device to commit theft. *State v. Bivins*, 191 Or App 460, 468, 83 P3d 379 (2004) (internal quotation marks omitted).

That is not to say that no other inferences could be drawn from the evidence. It is possible that defendant did not intend to use the device he was carrying to break into a car; it is at least *possible* that he intended to use it to barter with others at the camp, as one of the officers testified. But that mere possibility should not be a reason to keep this case from the factfinder. Where competing inferences can be drawn from the evidence, the factfinder is free to choose

---

[3] We readily infer guilt and criminal intent from less obstructive conduct. *See State v. Towers*, 224 Or App 352, 356, 197 P3d 616 (2008) (the defendant's false statement about her true identity was evidence of guilty conscience); *State v. Ohm*, 224 Or App 390, 397, 197 P3d 1136 (2008) (the defendant's refusal to take breath test showed consciousness of guilt); *State v. Kelley*, 29 Or App 321, 326, 563 P2d 749, *rev den*, 279 Or 301 (1977) ("Generally, acts which are intended to obstruct justice or avoid punishment are relevant to prove consciousness of guilt." (citing *McCormick on Evidence* § 190, 451 (2d ed 1972))).

among them. *See id.* at 467 ("[T]he established facts may support multiple reasonable inferences and, if they do, which inference to draw is for the jury to decide."). In this case, with all reasonable inferences drawn in favor of the state, the evidence was sufficient to support a finding that defendant intended to use the device to commit theft. I would affirm the trial court's denial of defendant's motion for a judgment of acquittal.[4] Accordingly, I respectfully dissent.

[4] Defendant also assigned error to the trial court's denial of his motion to suppress evidence. I would affirm that denial for reasons that need not be expressed.