Argued and submitted September 30, 2014, affirmed March 11, petition for review denied July 30, 2015 (357 Or 595)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KEITH SCOTT HODGES,
*Defendant-Appellant.*

Curry County Circuit Court
12CR0579; A152718

345 P3d 516

David O. Ferry, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Services.

Michael S. Shin, Senior Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

DEVORE, J.

## DEVORE, J.

Defendant appeals a judgment of conviction for attempting to elude a police officer, ORS 811.540(1)(b)(A), unlawful possession of methamphetamine, ORS 475.894, three counts of identity theft, ORS 165.800, and third-degree theft by receiving, ORS 164.095; ORS 164.043. We reject without further discussion defendant's first assignment of error, regarding the trial court's order that defendant wear a stun belt beneath his clothing during trial. In his second, third, and fourth assignments, defendant contends that the trial court erred in denying his motion for a judgment of acquittal on the three counts of identity theft. He contends that the state did not establish his intent to deceive or defraud. In his final assignment, defendant asks this court to review, as plain error, the trial court's entry of a judgment of conviction for theft by receiving, arguing that the conviction is unsupported by evidence in the record. For the reasons that follow, we affirm.

The facts are undisputed. While defendant was driving a stolen car from California, Officer Freeman attempted to pull him over for failure to signal. The encounter escalated into a high-speed chase on Highway 101. During the chase, defendant "took out a bank of mailboxes, kind of vaulted up over a berm, and at that point, the passenger side door came open," and the passenger dove out of the car. Freeman stopped for the passenger and lost pursuit of defendant. A short while later, other officers discovered the car in an embankment further up the road from where the passenger had leapt out. Defendant was nowhere to be found. Officers told nearby businesses that they were searching for a suspect on foot in the area. A drug dog sniffed the outside of the car and alerted, indicating the presence of drugs.

During a search of the car, officers found a variety of evidence, including a methamphetamine pipe and residue, birth certificates with the surnames Isbaldo and Isbaldo, Jr., credit cards bearing the surname Ortiz, Social Security cards with the surnames Pablo and Dos, and several personal documents belonging to Long and to her two children, aged four and six. Those documents included Long's Social Security card, real estate license, passport, a copy of

her birth certificate, both children's birth certificates and Social Security cards, IRS documents, and check receipts. The police also found a drugstore.com package containing baby-related products, addressed to "Mavris" in Crescent City, California. Some papers and a cellular phone belonging to defendant were also discovered in the car.

Early the next morning, and about one-half mile from the car, staff at the Whaleshead Resort found defendant asleep in a company linen van. They notified the police, who then arrested him. Defendant was charged with a number of offenses, including three counts of identity theft relating to the Long family's documents, and theft by receiving relating to possession of the drugstore.com box addressed to Mavris.

At trial, Long testified that her home in Fresno, California had been burglarized earlier that year and that the burglar had made away with a safe containing all of the family's documents that were recovered in the car. Long had filed a police report concerning the burglary. She did not know defendant, and she said that he did not have permission to have their documents.

One of the investigating officers, McCourt, had training in identity thefts. He testified that there is a market for Social Security cards and birth certificates, which may be used to create false financial accounts or for other fraudulent purposes. McCourt described the contents of the drugstore.com box as a package with a tracking number, addressed to Mavris in Crescent City. Before resting, the prosecutor reported to the trial court that Mavris was not present to testify as initially planned.[1]

Defendant moved for a judgment of acquittal on the counts involving identity theft. Among other things, he argued that "[t]here's been no evidence that [defendant] at any time with those identifications made any attempt to use or benefit from those IDs in any manner. [Y]ou have to show some intent to defraud with some type of an act

---

[1] On the first day of trial, the prosecutor had indicated to the court that the state intended to call Mavris as a witness the following day but was unsure that he would attend, because "[Mavris] said that he would be able to come, but he— since then he said he might not be able to make it, so I'm not sure."

by the defendant \* \* \*." The trial court denied the motion. Defendant was convicted of nine counts, including three counts of identity theft and one count of third-degree theft by receiving.

On appeal, defendant argues that the trial court erred in denying his motion for a judgment of acquittal. He argues that "there is no evidence in the record that defendant had the conscious objective to use the victim's personal identification in an attempt to mislead another person or to deprive another person of something by fraud or stealth, and reciprocally, to obtain some benefit to which he was not lawfully entitled." We review the denial of the motion for a judgment of acquittal to determine whether, viewing the facts in the light most favorable to the state, a rational factfinder could have found the elements of the crime beyond a reasonable doubt. *State v. Cervantes*, 319 Or 121, 125, 873 P2d 316 (1994).

At the time of defendant's conduct, the statute provided that a person commits the crime of identity theft if "the person, with the intent to deceive or to defraud, obtains, possesses, transfers, creates, utters or converts to the person's own use the personal identification of another person." ORS 165.800(1).[2] "In establishing [an] element, the state may rely on circumstantial evidence and reasonable inferences flowing from that evidence." *State v. Bivins*, 191 Or App 460, 466, 83 P3d 379 (2004). "[E]stablished facts may support multiple reasonable inferences and, if they do, which inference to draw is for the jury to decide." *Id.* at 467.

Defendant relies on *State v. Martin*, 243 Or App 528, 534, 260 P3d 197 (2011), for the proposition that a "[d]efendant's mere possession of [another's identification card] is not by itself probative of an intent to use the card to deceive or defraud." *See also State v. Cook*, 265 Or App 506, 513, 335 P3d 846 (2014) (mere possession of a tool consistent with tools used in the commission of burglaries is insufficient to

---

[2] The statute was amended during the 2013 regular session of the Legislative Assembly. *See* Or Laws 2013, ch 158, § 34. That amendment, expanding the definition of "another person," is not applicable to this case. All subsequent references to ORS 165.800 are to the version in effect at the time of defendant's conduct in 2012.

support a finding that the defendant intended to use the tool to commit a crime). In *Martin*, the defendant was arrested and booked for burglary. During an inventory of his personal effects, an officer found an Oregon DMV identification card bearing another individual's name and photograph. *Id.* at 530. The defendant claimed that he had found the identification card in a wallet but would not tell officers where he found the wallet or where the wallet was at that time. *Id.* At trial and again on appeal, defendant argued that his mere possession of someone else's identity card and his failure to account for the wallet was not sufficient to establish the intent element of the offense. *Id.* at 533. We reversed the judgment of conviction, explaining that the facts of the case did not "rise to the level of an inference beyond a reasonable doubt that defendant intended to use the card to deceive or defraud another at the time that he possessed it." *Id.* at 534.

We distinguished *Martin* in *State v. McAtee*, 245 Or App 233, 261 P3d 1284 (2011). In that case, a bus passenger observed the defendant "rummaging through a bag placed under the seat of the victim, who was sitting in the seat in front of defendant." *Id.* at 235. During a later search of the defendant, the police found the victim's identification card and credit card. *Id.* The defendant admitted to taking the victim's wallet, keeping the identification card and credit card, and disposing of the wallet and its other contents. *Id.* The defendant was charged with identity theft. At trial, he moved for a judgment of acquittal, arguing that there was no evidence to prove that he had the intent to deceive and defraud. The trial court denied the motion. On appeal, we concluded that the defendant's actions—going through the victim's bag to steal her wallet and removing the identification card and credit card from the rest of the wallet—"show more than mere possession of items that could be used with criminal intent." *Id.* at 238. In contrast to *Martin*, we explained that the defendant's conduct indicated that he had "made a deliberate choice to steal and keep only those items that would be useful for identity theft[.]" That conduct permitted a reasonable inference about his intent to deceive or defraud. *Id.* at 239.

In this case, there is additional evidence, beyond defendant's possession of another's identification card, that

supports the inference that defendant intended to deceive or defraud. First, the quantity and quality of identity-related documents in defendant's possession far exceeds the evidence at issue in *Martin*. When the police searched the car that defendant was driving, they discovered that defendant was in possession of many personal identification documents from different individuals, including a passport, credit cards, Social Security cards, and birth certificates. McCourt testified that those documents are consistent with items used to commit identity theft. Defendant inexplicably possessed "only those items that could easily be used to steal another's identity." *McAtee*, 245 Or App at 239. Second, similar to *McAtee*, the counts of identity theft, as alleged in this case, related to items that were reported stolen by the owner. Long testified that the personal identification documents were taken in the course of an earlier burglary. Her stolen documents were then recovered in the car that defendant was driving while eluding police during a high-speed chase. Given that defendant had possession of a number of stolen identity documents of the type that could easily be used to commit identity theft, a jury could reasonably infer that defendant intended to use the documents to deceive or to defraud.[3] The trial court did not err in denying defendant's motion for a judgment of acquittal on the counts involving identity theft.

We turn to defendant's request that we review, as plain error, the trial court's failure, sua sponte, to acquit him of theft by receiving. *See* ORAP 5.45(1); *State v. Reynolds*, 250 Or App 516, 520, 280 P3d 1046, *rev den*, 352 Or 666 (2012). Defendant argues on appeal that the evidence is insufficient to support the conviction for theft by receiving because the record only establishes that defendant possessed a box from drugstore.com addressed to Mavris in Crescent

---

[3] We have explained that, in identity theft cases, there is sufficient evidence to establish intent to deceive or defraud where "the state proved that the defendants had *stolen* credit cards and other documents, not merely possessed them." *Cook*, 265 Or App at 511 (emphasis in original). Although the state did not allege or prove that defendant himself stole the documents found in the car, the state did demonstrate that defendant possessed numerous stolen identity documents while fleeing from the police. Therefore, there is a reasonable inference that, however defendant came into possession of Long's and her children's documents, he did not do so innocently.

City. Defendant contends that there was no evidence that he retained property that he had reason to know was stolen, as required under ORS 164.095.[4] The state responds that there was no plain error, because defendant "was driving a stolen car with a bag containing a collection of stolen personal identification" and that that evidence could permit a reasonable factfinder to infer that the box, addressed to another individual, was also stolen property. The state adds that, even if there were plain error, we should not exercise our discretion to correct it.

We may review an unpreserved assignment of error as "an error of law apparent on the record" under ORAP 5.45(1) if certain conditions are met: (1) the error is one of law; (2) the error is "apparent"—that is, the legal point is obvious and is not reasonably in dispute; and (3) the error appears "on the face of the record"—that is, "[w]e need not go outside the record or choose between competing inferences to find it, and the facts that comprise the error are irrefutable." *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990). Where those conditions are satisfied, "we must determine whether to exercise our discretion to reach the error and correct it." *Reynolds*, 250 Or App at 520 (citing *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991)). Among the factors that we consider in deciding whether to exercise our discretion are

> "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the polices behind the general rule requiring preservation of error have been served in the case in another way, *i.e.*, whether the trial court was, in some manner, presented with both sides of the issue and given an opportunity to correct any error."

*Ailes*, 312 Or at 382 n 6. Additionally, we consider "whether the defendant encouraged the trial court to make the error; whether the defendant made a strategic choice not to object;

---

[4] ORS 164.095 provides, in part:

"(1) A person commits theft by receiving if the person receives, retains, conceals or disposes of property of another knowing or having good reason to know that the property was the subject of theft."

and whether the trial court could have corrected the error if the defendant had raised it below." *State v. Lusk*, 267 Or App 208, 212, 340 P3d 670 (2014) (citing *Reynolds*, 250 Or App at 521).

Even if we assume that the alleged error is an error of law, we cannot conclude that the error is plain. That is so, because the purported insufficiency of the state's proof is "reasonably in dispute." *Brown*, 310 Or at 355. It is certainly true that "in a theft prosecution based upon a theory of illegally obtaining or receiving the property of another the state must prove that the property was, in fact, stolen." *State v. Niehuser*, 21 Or App 33, 37, 533 P2d 834 (1975); *see also State v. Harper*, 244 Or App 10, 15, 260 P3d 596, *adh'd to as modified on recons*, 245 Or App 292, 267 P3d 853 (2011). It is also true that dubious circumstances are not enough to establish that the property is stolen. For instance, in *Harper*, the victim of a laptop theft did not testify at the defendant's trial that her laptop had been stolen, and the state did not offer any other admissible evidence establishing that element. Although the defendant had "'good reason to know'" that the laptop had been stolen when he made arrangements to sell it to an undercover agent, it was still "incumbent on the state to prove that the laptop had, in fact, been the subject of theft." 244 Or App at 15.

Here, however, there is more. There is defendant's immediate behavior: Defendant was apprehended after attempting to elude officers. There is the context within which the box was found: The box was found within the stolen car that defendant was driving and the box was found in the car along with a number of stolen documents. Finally, there is the box itself: Like the stolen documents with the names of others, the box was addressed to another name. It was to have been delivered to a "Mavris" in Crescent City, and its contents were baby-related products. The circumstances need not be enough to survive a motion for a judgment of acquittal on the charge of theft; rather, the circumstances only need to be enough to permit the state to have made enough of a credible argument such that any error would not be plain. We do not here decide whether the circumstances were sufficient to have sustained a motion for

a judgment of acquittal, but we do conclude, under all the circumstances, that any error was not plain. Therefore, we will not review the final assignment of error regarding the theft conviction.

Affirmed.