Submitted December 16, 2015, affirmed July 26, 2017

STATE OF OREGON,
*Plaintiff-Respondent,*
*v.FMctee*

SAVANNAH JULAINE LEWIS,
*Defendant-Appellant.*

Coos County Circuit Court
13CR1532; A156488

400 P3d 977

Peter Gartlan, Chief Defender, and Erik Blumenthal, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Paul L. Smith, Deputy Solicitor General, and Michael S. Shin, Assistant Attorney General, filed the brief for respondent.

Before DeVore, Presiding Judge, and Garrett, Judge, and Duncan, Judge pro tempore.

## DUNCAN, J. pro tempore

Defendant appeals her convictions for one count of unlawful possession of methamphetamine, ORS 475.894 (Count 1), two counts of identity theft, ORS 165.800 (Counts 2 and 3), and one count of third-degree theft, ORS 164.043 (Count 4). On appeal, defendant raises four assignments of error. We write only to address defendant's first and second assignments of error, in which she challenges the trial court's denial of her motions for judgments of acquittal on the two counts of identity theft. For the reasons explained below, we affirm.[1]

When reviewing a trial court's denial of a defendant's motion for judgment of acquittal, "we review the record and all reasonable inferences that may be drawn therefrom in the light most favorable to the state to determine whether the trier of fact could have found all of the elements of the charged offenses beyond a reasonable doubt." *State v. Clum*, 216 Or App 1, 5, 171 P3d 980 (2007) (citing *State v. Cervantes*, 319 Or 121, 125, 873 P2d 316 (1994)).

Defendant was charged with two counts of identity theft for violating ORS 165.800.[2] One count was for possessing personal identification of another person (Count 2), and the other count was for transferring the personal identification of another person (Count 3).

At defendant's jury trial, the state presented evidence that, on the date of the charged crimes, defendant was at a casino with a companion, Randolph. A casino patron, Siegel, left her jacket on a chair when she went to cash in a ticket. Randolph pointed out the jacket to defendant, who took it from the chair and carried it into the women's restroom. When Siegel returned to the chair, she noticed that the jacket was gone and immediately informed casino

---

[1] Defendant's third assignment of error challenges the trial court's denial of her request for a jury instruction on attempted identity theft, and we reject that assignment on the merits without further discussion. Defendant's fourth assignment challenges her sentence, and we reject that assignment as moot.

[2] ORS 165.800 provides, in part, "A person commits the crime of identity theft if the person, with the intent to deceive or to defraud, obtains, possesses, transfers, creates, utters or converts to the person's own use the personal identification of another person."

security officers. The security officers found the jacket in the restroom and returned it to Siegel.

Siegel called the police, who came to the casino and reviewed video footage from the casino's surveillance system. The footage showed defendant taking Siegel's jacket after Randolph pointed it out to her, walking to the restroom with Randolph, and entering the restroom with the jacket, but exiting the restroom without it. After viewing the footage, the police located defendant in the casino. She was in possession of items that had been in Siegel's jacket, including keys, cigarettes, an energy drink, and a Walmart gift card. The police checked the restroom trash for other items that had been in Siegel's jacket, but did not find any. Defendant told the police that she had given the identification and banking cards that had been in the jacket to Randolph. The next night, an associate of Randolph's turned in five cards at a convenience store located a few miles south of the casino, claiming to have found them. The cards were Siegel's driver's license, Veterans' Affairs card, Bank of America card, Oregon Trail card, and Siegel's sister's BiMart card. Some items that had been in the jacket were never recovered, including a Radio Shack gift card.

Siegel testified that the jacket had many pockets. The cigarettes had been in one pocket, the energy drink had been in a second pocket, and all of the cards had been in a third pocket. Siegel did not recall whether her keys had been in the same pocket as any of those items or in their own pocket.

On appeal, defendant argues, as she did in the trial court, that the state presented insufficient evidence to support convictions on the two identity theft counts. Specifically, defendant argues that the state presented insufficient evidence to support a finding that she possessed and transferred Siegel's personal identification with the intent to deceive or defraud. Defendant contends that she "committed a simple theft of Siegel's jacket" and notes that, in *State v. Martin*, 243 Or App 528, 534, 260 P3d 197 (2011), we held that mere possession of another person's identification card is "not by itself probative of an intent to use the card to deceive or defraud." Defendant also points out that she "did

not retain the personal identification that happened to be in the jacket."

We conclude that the state presented sufficient evidence to support defendant's identity theft convictions. Although defendant is correct that, under *Martin,* evidence of mere possession of another person's identification is not sufficient to prove an intent to deceive or defraud, the state's evidence in this case was not limited to defendant's mere possession of another's personal identification. As explained below, the evidence in this case is distinguishable from that in *Martin;* instead, it is similar to that in *State v. McAtee,* 245 Or App 233, 261 P3d 1284 (2011), and *State v. Elliott,* 249 Or App 208, 275 P3d 184 (2012), in which we held that evidence that a defendant searched for and retained items that could be easily used to steal another's identity was sufficient to support a finding that the defendant possessed the items with the intent to deceive or defraud.

In *Martin,* the defendant was convicted of identity theft based on his possession of another person's Oregon identification card. The defendant was a white man, and the photograph on the identification card was of a white man who was approximately the same age and weight of the defendant. The defendant told the police that he had found the card in a wallet, but the defendant carried the card loose in a pocket and refused to tell the police where the wallet was. On appeal, we held:

> "Defendant's mere possession of the card is not by itself probative of an intent to use the card to deceive or defraud. Moreover, defendant was under no legal obligation to explain further his possession of another person's identification card to the police, and his disclosure that he had found the card in a wallet that had been lost implies no criminal wrongdoing on his part."

*Martin,* 243 Or App at 534. Regarding the similarity between the defendant and the person in the photograph, the manner in which the defendant carried the card, and the defendant's refusal to identify the location of the wallet, we further held:

> "[T]hose facts, whether considered individually or together with all the other circumstances in this case, do not rise

to the level of an inference beyond a reasonable doubt that defendant intended to use the card to deceive or defraud another at the time that he possessed it. Rather, they require a factfinder to speculate as to what action, if any, that defendant might take with the card in the future."

*Id.*

We distinguished *Martin* in *McAtee*, where the defendant was convicted of identity theft based on evidence that he had rummaged through another person's bag, taken a wallet from the bag, removed and retained personal identification from the wallet, and then discarded the wallet. We explained that that evidence allowed "a logical inference that defendant made a deliberate choice to steal and keep only those items that would be useful for identity theft and that he did so with the intent to use the information to deceive or defraud." *McAtee*, 245 Or App at 238.

Similarly, in *Elliott*, we held that evidence that the defendant entered a private office, searched a desk, and removed five credit cards, two checks, and a personal digital assistant was sufficient to support his conviction for identity theft. We explained that, because the defendant searched the desk and took only items that could be used to steal another's identity, "the evidence was legally sufficient to permit the jury to infer defendant's intent to deceive or defraud beyond a reasonable doubt." *Elliott*, 249 Or App at 212-13.

As in *McAtee* and *Elliott*, we conclude that, contrary to defendant's arguments in the trial court and on appeal, the evidence in this case was sufficient to permit a factfinder to find that defendant had the intent to deceive or defraud when she possessed and transferred Siegel's personal identification. Defendant searched Siegel's jacket, which had many pockets, and removed items from different pockets. Among the items she removed were identification, banking, and gift cards that were together in one pocket. Defendant retained one card, a Walmart gift card, and gave others to Randolph. The cards defendant gave to Randolph included Siegel's driver's license, Veterans' Affairs card, Bank of America card, and Oregon Trail card, all of which could be used to steal Siegel's identity. Based on that evidence, a reasonable

factfinder could find that defendant possessed and transferred the cards with the intent to deceive or defraud.

Although it is true that, unlike in *McAtee* and *Elliott*, defendant did not retain the cards, but instead transferred them to another person, that fact does not lead to a different conclusion. There was sufficient evidence to support a finding that defendant was working in concert with Randolph. Specifically, there was evidence that Randolph pointed out Siegel's jacket to defendant and, after defendant picked up the jacket, Randolph walked with her to the restroom; then, after searching the jacket and sorting its contents in the restroom, defendant exited and gave some of the cards to Randolph before the police contacted her. Based on that evidence, a reasonable factfinder could find that defendant and Randolph were accomplices, engaged in a joint endeavor to obtain items that could be used to steal another person's identity, and thus that defendant acted with the intent to deceive or defraud.

Affirmed.