*This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).*

Submitted May 25; in Case No. 21CR18248, conviction for second-degree burglary reversed and remanded for entry of a conviction for second-degree criminal trespass, remanded for resentencing, otherwise affirmed; in Case No. 20CR34564, affirmed, June 28, 2023

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ROMAN SERGEYIVICH SHATALOV,
aka Roman Shatalov,
*Defendant-Appellant.*

Yamhill County Circuit Court
21CR18248, 20CR34564;
A177429 (Control), A177430

Cynthia L. Easterday, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Morgen E. Daniels, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Shannon T. Reel, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, and Joyce, Judge, and Jacquot, Judge.

AOYAGI, P. J.

In Case No. 21CR18248, conviction for second-degree burglary reversed and remanded for entry of a conviction for second-degree criminal trespass; remanded for resentencing; otherwise affirmed. In Case No. 20CR34564, affirmed.

**AOYAGI, P. J.**

In this consolidated appeal, defendant raises two assignments of error regarding the judgment in Case No. 21CR18248. First, he argues that the trial court erred by failing to enter a judgment of acquittal on Count 1, second-degree burglary, ORS 164.215. Second, he argues that the trial court erred by failing to enter a judgment of acquittal on Count 2, identity theft, ORS 165.800. Although defendant did not formally move for a judgment of acquittal, the charges were tried to the court, and defendant challenged the legal sufficiency of the evidence in closing argument, which "is the equivalent of a motion for judgment of acquittal." *State v. Gonzalez*, 188 Or App 430, 431, 71 P3d 573 (2003). Defendant's claims of error are therefore preserved. As described below, we conclude that the trial court erred with respect to Count 1, but not Count 2. Accordingly, in Case No. 21CR18248, we reverse the conviction for second-degree burglary and remand for entry of a conviction for the lesser-included offense of second-degree criminal trespass, as well as resentencing, and otherwise affirm. In Case No. 20CR34564, as to which defendant raises no assignments of error, we affirm.

On review of the denial of a motion for judgment of acquittal, we view the evidence in the light most favorable to the state and determine whether a rational factfinder "could have found that the essential elements of the crime had been proved beyond a reasonable doubt." *State v. Paragon*, 195 Or App 265, 267, 97 P3d 691 (2004). In making that assessment, we must consider all "reasonable inferences" favorable to the state that a rational factfinder could make from the evidence, while recognizing that "speculation and guesswork" are not allowed. *State v. Bivins*, 191 Or App 460, 467, 83 P3d 379 (2004).

"[I]t has long been settled law in Oregon that a party may rely on reasonable inferences arising from circumstantial evidence to establish elements of a criminal offense." *State v. Hedgpeth*, 365 Or 724, 733, 452 P3d 948 (2019). "Ultimately, whether circumstantial evidence is sufficient to support a given inference is a question of law." *State v. Simmons*, 321 Or App 478, 483, 516 P3d 1203 (2022),

*rev den*, 370 Or 740 (2023). "If there is an experience of logical probability that an ultimate fact will follow a stated narrative or historical fact, then the [factfinder] is given the opportunity to draw a conclusion because there is a reasonable probability that the conclusion flows from the proven facts." *Bivins*, 191 Or App at 467 (internal quotation marks omitted). When the established facts "support multiple reasonable inferences," it is for the factfinder to decide which inference to draw. *Id*. However, when competing reasonable "inferences are in equipoise and there are no other facts which would aid the jury in deciding whether to draw one inference or the other[,]" it would "simply invite jury speculation" to submit the question to the jury. *State v. Hall*, 269 Or 63, 70, 523 P2d 556 (1974). When the evidence is truly in equipoise, such that there is no evidentiary basis for the factfinder to choose one inference over the other, "it [is] necessary to say as a matter of law that the state has not met its burden of proof." *Id*. at 71.

*Burglary.* A person commits second-degree burglary by entering or remaining unlawfully in a building with intent to commit a crime therein. ORS 164.215(1). Here, defendant was charged with entering or remaining unlawfully in a grocery store with the intent to commit theft. Defendant contends that he was entitled to a judgment of acquittal on that charge, because the evidence was legally insufficient to prove that he intended to commit theft when he entered the store. The state maintains that the evidence allowed an inference that he entered with the intent to commit theft.

We state the facts in the light most favorable to the state. Defendant entered a closed Grocery Outlet store sometime around 2:00 a.m. through a rear fire door that was accidentally left unlocked. His entry triggered an audible alarm. A store employee arrived around 2:30 a.m., entered through the locked front door, and turned off the alarm. He went to check the rear fire door and found it unlocked. It was completely dark inside the store. The employee thought it was a false alarm but decided to take a quick walk through the store with his flashlight. When he did, he saw defendant walking in the back corner of the store. Defendant was

carrying a flashlight that belonged to the store and was still in its packaging. The employee told defendant to stop and that he was going to call the police. Defendant asked him not to call the police. The employee called 9-1-1. Per the employee, defendant "was willing to move towards the front and wait for [the police] there." Defendant set down the flashlight when he got to the front of the store. A police officer arrived almost immediately. The officer arrested defendant and searched him for any store items; he did not find any. After they departed, the employee put the flashlight that defendant had been using back on the shelf where it belonged.[1]

In closing argument, as to the burglary charge, the prosecutor argued that it was reasonable to infer that defendant intended to commit theft in the store because he entered through a back door "in the early morning hours" and used a flashlight inside the store, which the prosecutor described as being "as close to a burglary tool that you could grab in a Grocery Outlet without actually being one of the ones that's defined by statute." The trial court ultimately found defendant guilty of all charges, stating only that the evidence was "sufficient" and that it did not have reasonable doubt as to guilt.

We agree with defendant that the evidence was legally  insufficient to find him guilty of second-degree burglary. The facts of this case are unusual, and the evidentiary record is quite slim. It is not at all clear what defendant's intentions were in entering a closed grocery store in the middle of the night through an unlocked door and then wandering around for up to half an hour after triggering an audible alarm.[2] Certainly, it is possible that he intended to commit theft. There are other possibilities, however, such as misguided curiosity, seeking shelter, mental health

---

[1] There is no evidence that the employee had seen defendant discard any items before the police arrived (other than setting down the flashlight), nor is there any evidence that the employee found anything out of place after defendant departed.

[2] It is unclear exactly how long defendant was in the store, because there was no evidence as to exactly when the alarm went off. However, based on the employee's testimony, defendant was in the store for somewhere between 10 and 30 minutes. Neither party treats the uncertainty on that point as significant.

issues, and the like. Unless every criminal trespass into an unlocked building containing items that could be stolen is to be treated automatically as second-degree burglary, there must be *some* evidence linking the criminal trespass to an intention to commit theft. That evidentiary burden may be minimal in practice, but it requires *something*. On this particular record, inferring that defendant intended to commit theft when he entered the building would require impermissible speculation.[3] *Cf. State v. J. N. S.*, 258 Or App 310, 321, 308 P3d 1112 (2013) (holding that it would require impermissible speculation to infer that a person who broke into a vacant house had the intent to commit theft at the time of entry, where the only evidence from which that inference could be drawn was that he found a key in the house and took it).

Accordingly, we reverse defendant's conviction for second-degree burglary, and we remand for entry of a conviction for the lesser-included offense of second-degree criminal trespass. *See* ORS 164.245(1) ("A person commits the crime of criminal trespass in the second degree if the person enters or remains unlawfully in a motor vehicle or in or upon premises."); ORS 164.205(6) (defining "premises" to include "any building"); *State v. Chatelain*, 220 Or App 487, 495-96, 188 P3d 325 (2008), *aff'd*, 347 Or 278, 220 P3d 41 (2009) ("Because all of the elements of second-degree criminal trespass were expressly set forth in the indictment for second-degree burglary, the former is a lesser-included offense of the latter.").

*Identity Theft.* A person commits identity theft "if the person, with the intent to deceive or to defraud, obtains, possesses, transfers, creates, utters or converts to the person's own use the personal identification of another person." ORS 165.800(1); *see also* ORS 165.800(4)(b) (defining

---

[3] The prosecutor appears to have viewed defendant's use of a store flashlight as the key evidence allowing an inference that defendant intended to commit theft. However, given that the store was completely dark, one would need a flashlight to see regardless of one's underlying intentions. The employee also used a flashlight to see while he was inside the store. Defendant did not bring the flashlight to the store with him. It should be noted that the state never suggested that defendant intended to steal the flashlight—only that he was using it as essentially a burglar's tool.

"personal identification"). Here, defendant was charged with identity theft based on a debit card that was found in his wallet at the time of arrest. Defendant contends that the trial court erred in failing to enter a judgment of acquittal, because the evidence was legally insufficient to prove that he possessed the card with the intent to deceive or defraud.

When defendant was arrested at the Grocery Outlet, he had someone else's debit card in his wallet, the envelope in which the debit card had been mailed to the cardholder in his jacket pocket, and a credit card offer for another person also in his jacket pocket. The debit card had been mailed to someone at an outdated address, and the credit card offer had been mailed to someone else in the same apartment complex. Possession of someone else's personal identification "is not by itself probative of an intent to use [the identification] to deceive or defraud." *State v. Martin*, 243 Or App 528, 534, 260 P3d 197 (2011). On this record, however, we are persuaded that the evidence was sufficient to go to the fact-finder on whether defendant possessed the debit card with intent to deceive or defraud. We therefore affirm the conviction for identify theft.

In Case No. 21CR18248, conviction for second-degree burglary reversed and remanded for entry of a conviction for second-degree criminal trespass; remanded for resentencing; otherwise affirmed. In Case No. 20CR34564, affirmed.