# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2021-NMCA-006

Filing Date: December 10, 2020

No. A-1-CA-37676

STATE OF NEW MEXICO,

      Plaintiff-Appellee,

v.

ANGELO ANTONIO MONTOYA,

      Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Stan Whitaker, District Judge

Certiorari Denied, February 4, 2021, No. S-1-SC-38638.  Released for Publication March 9, 2021.

Hector H. Balderas, Attorney General
Santa Fe, NM
Walter Hart, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**YOHALEM, Judge.**

**{1}** Defendant Angelo Antonio Montoya appeals his conviction for possession of burglary tools, in violation of NMSA 1978, Section 30-16-5 (1963). Defendant contends that there was insufficient evidence to support his conviction. Alternatively, Defendant seeks reversal based on prosecutorial misconduct.

**{2}**     We agree that the evidence of intent to commit burglary, an essential element of the crime of possession of burglary tools, was insufficient to support Defendant's conviction. Because we reverse on this ground, we do not consider Defendant's remaining claim of error.

## BACKGROUND

**{3}**     Albuquerque Police Department Officer Russell Jones observed a black Ford Bronco (Bronco) towing a brown 2013 Audi SUV (Audi). Noting that the Bronco had no license plates, Officer Jones stopped the two vehicles. The Bronco, towing the Audi, pulled over to the center turning lane. Because there were two vehicles, Officer Jones called for backup.

**{4}**     When Officer Earl Nagy arrived, the two officers approached the Audi, one on each side. Officer Jones opened the driver's side door and asked Defendant to step outside. Defendant stepped out of the vehicle and ran from the officers. Officer Nagy chased and apprehended Defendant.

**{5}**     While Officer Nagy apprehended Defendant, Officer Jones approached the driver of the Bronco. Officer Jones noticed the Bronco had a key broken in the ignition, which the officer testified might indicate the vehicle was stolen. The Bronco, however, had not been reported stolen. Neither the driver nor the passenger in the Bronco was charged with a crime.

**{6}**     A third officer, Officer Cornel Heitzman, arrived and searched Defendant. In Defendant's pocket, Officer Heitzman found, among other things, two hypodermic needles and a keychain with five car keys for different makes and models of cars. Two of the officers testified that the car keys were filed down to make what are known as "jiggle" or "bump" keys. These were described by the officers as a universal key. Officer Jones testified that the only use for "jiggle" keys is to break into and/or steal motor vehicles. Officer Heitzman testified that "jiggle" keys are used to start vehicles and that their purpose is to increase success in taking a vehicle without the owner's permission.

**{7}**     After being searched, Defendant told Officer Jones the Audi had been rented by a friend, its battery died, and the friend asked Defendant to help him jump start the car. Officer Jones asked Defendant for the friend's name. Defendant did not know his name. Officer Jones asked Defendant if the Audi was stolen. Defendant said, if the vehicle had been stolen, the GPS would have found it by now. At trial, no evidence was presented that the Audi was stolen.

**{8}**     The Audi was a push-start vehicle that required a key fob near the ignition to start the car. Neither a key fob nor rental papers were located by the police. The door handles, locks, ignition, and windows of the Audi were not damaged. Officer Jones testified that "jiggle" keys may not be successful in entering a push-start car like the Audi. He also explained that stolen vehicles are not always damaged when stolen.

**{9}** Defendant was charged with four crimes: receiving or transferring a stolen motor vehicle, contrary to NMSA 1978, Section 30-16D-4(A) (2009); possession of burglary tools, contrary to Section 30-16-5; possession of drug paraphernalia, contrary to NMSA 1978, Section 30-31-25.1(A) (2001, amended 2019); and resisting, evading, or obstructing an officer, contrary to NMSA 1978, Section 30-22-1(D) (1981). A jury trial was held, and at the conclusion of the State's evidence, Defendant moved for a directed verdict on the charges of receiving or transferring a stolen motor vehicle and possession of burglary tools, arguing that the evidence was insufficient to convict of either charge. The district court granted the motion in part, dismissing the charge of receiving or transferring a stolen motor vehicle and allowing the possession of burglary tools charge to go to the jury. The jury returned a guilty verdict on the possession of burglary tools charge, as well as on the two misdemeanor charges.

**{10}** Defendant appeals his conviction of possession of burglary tools.[1]

## DISCUSSION

### The Evidence Was Insufficient to Support Defendant's Conviction for Possession of Burglary Tools

### A.      Standard of Review

**{11}** "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Ford*, 2019-NMCA-073, ¶ 7, 453 P.3d 471 (internal quotation marks and citation omitted). We "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. The relevant question is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (emphasis, internal quotation marks, and citation omitted).

**{12}** Despite our deferential approach, it is our responsibility to ensure that the jury's decisions are supported by evidence and by reasonable inferences from that evidence. *State v. Slade*, 2014-NMCA-088, ¶ 14, 331 P.3d 930. "A reasonable inference is a conclusion arrived at by a process of reasoning which is a rational and logical deduction from facts admitted or established by the evidence." *Id.* (alterations, internal quotation marks, and citation omitted).

---

[1]Defendant has not appealed his misdemeanor convictions (possession of drug paraphernalia and resisting, evading, or obstructing an officer).

## B.    The Contentions of the Parties

**{13}**    Consistent with Section 30-16-5 and UJI 14-1633 NMRA, the jury was instructed that in order to convict Defendant of possession of burglary tools, it had to find, beyond a reasonable doubt, each of the following elements of the crime:

1.    [D]efendant had in his possession "jiggle" and/or "bump" keys;

2.    "Jiggle" and/or "bump" keys are designed for or commonly used in the commission of a burglary;

3.    [D]efendant intended that the "jiggle" and/or "bump" keys be used for the purpose of committing a burglary;

4.    This happened in New Mexico on or about the 23rd day of August, 2017.

The jury was also instructed, in relevant part, that "burglary consists of the unauthorized entry of any vehicle, . . . or other structure, movable or immovable, with intent to commit any felony or theft therein." NMSA 1978, § 30-16-4 (1963). "Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883.

**{14}**    Defendant concedes that the State introduced sufficient evidence to establish, beyond a reasonable doubt, all but the third element of the jury instructions. Therefore, we focus solely on the sufficiency of the evidence to establish that "[D]efendant intended that the 'jiggle' and/or 'bump' keys be used for the purpose of committing a burglary."

**{15}**    As Defendant's challenge is limited to the third element of the jury instructions, we assume without deciding that the State's evidence was sufficient to allow a jury to conclude that "jiggle" or "bump" keys are designed for the commission of burglary and have no legitimate purpose. Defendant argues that the jury may not infer his intent to commit burglary solely from this evidence; he contends that there must be direct or circumstantial evidence from which the jury can draw a reasonable inference that Defendant actually intended to use the keys to commit a burglary.

**{16}**    The State argues that Officer Jones's testimony that there was "no other purpose for Defendant to possess the 'jiggle' or 'bump' keys than to obtain unauthorized entry to *a* motor vehicle" was sufficient to establish the third element of the jury instructions: intent to commit a burglary. Alternatively, the State contends the circumstances at the time of Defendant's arrest were sufficient to allow the jury to infer that "[D]efendant intended the 'jiggle' and/or 'bump' keys be used for the purpose of committing a burglary."

**{17}** We first address whether, pursuant to Section 30-16-5, a jury is permitted to infer a defendant's intent to use a tool to commit a burglary solely from evidence that a defendant is carrying a burglary tool that has no legitimate purpose. We then address the State's alternative argument that the circumstances at the time of Defendant's arrest were sufficient to allow the jury to infer Defendant's intent to use the "jiggle" or "bump" keys to commit a burglary. We conclude that a jury may not rely solely on evidence that a defendant is carrying a tool designed for burglary that has no legitimate purpose to prove the element of intent to commit a burglary. Because the evidence of the circumstances at the time of Defendant's arrest was also insufficient to establish this intent, we reverse Defendant's conviction.

**C.      Section 30-16-5 Requires Direct or Circumstantial Evidence of Intent to Use a Burglary Tool to Actually Commit a Burglary**

**{18}** Whether proof of possession of a tool designed exclusively for use as a burglary tool is alone sufficient to satisfy the statutory element of intent to use that tool in the commission of a burglary is a question of first impression. Although this Court has addressed the elements of our possession of burglary tools statute, this Court's previous decisions concerning the element of intent have involved possession of multi-purpose tools. *See, e.g.*, *Ford*, 2019-NMCA-073, ¶ 4 (a screwdriver); *State v. Flores*, 2018-NMCA-075, ¶ 22, 430 P.3d 534 (a computer); *State v. Barragan*, 2001-NMCA-086, ¶ 27, 131 N.M 281, 34 P.3d 1157 (a pry bar), *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110; *State v. Jennings*, 1984-NMCA-051, ¶ 12, 102 N.M. 89, 691 P.2d 882 (flashlights and screwdrivers); *State v. Hernandez*, 1993-NMCA-132, ¶ 2, 116 N.M. 562, 865 P.2d 1206 (screwdrivers).

**{19}** "When a challenge to the sufficiency of the evidence requires us to engage in statutory interpretation to determine whether the facts of a case, when viewed in the light most favorable to the verdict, are legally sufficient to sustain a conviction, we apply a de novo standard of review." *Ford*, 2019-NMCA-073, ¶ 9 (alterations, internal quotation marks, and citation omitted). We begin our analysis with the plain language of our possession of burglary tools statute. Section 30-16-5 explicitly requires (1) possession of tools "designed or commonly used for the commission of burglary" *and* (2) "under circumstances evincing an intent to use the same in the commission of burglary."

**{20}** The first requirement—possession of tools "designed or commonly used for the commission of burglary"—has been construed by this Court to require the jury to find that the "purpose of carrying such an object was for use as a [burglary tool]." *Jennings*, 1984-NMCA-051, ¶¶ 6, 11 (internal quotation marks and citation omitted). This Court in *Jennings* draws a careful distinction between "the purpose of carrying the item," the finding necessary to establish the first element of the statute, and a defendant's intent "to actually *use* the object" in the commission of a burglary, the finding required to establish the second required element of the statute. *Id.* ¶ 11; *see State v. Blea*, 1983-NMCA-089, ¶ 10, 100 N.M. 237, 668 P.2d 1114 (distinguishing, in the context of the

offense of possession of a deadly weapon, the purpose of carrying an item from the requirement of proof that a defendant intended to use the item to commit a crime).

**{21}**   As this Court emphasized in *Blea*, and reinforced in *Jennings*, the purpose for which a defendant possessed the prohibited item is distinct and separate from his or her intent to use the item to commit a crime. *See Jennings*, 1984-NMCA-051, ¶¶ 11-12; *Blea*, 1983-NMCA-089, ¶ 10; *see also Leftwitch v. United States*, 251 A.2d 646, 648-49 (D.C. 1969) (distinguishing proof that the purpose of carrying an object is as a weapon from proof of intent to actually use the weapon to threaten or harm someone).

**{22}**   Consistent with the definition of intent adopted by these cases, this Court has required proof of circumstances that create a reasonable inference that a defendant has either used the tool in a burglary or an attempted burglary, or evince a defendant's intent to use the tool in the commission of a burglary. *See Barragan*, 2001-NMCA-086, ¶ 27 ("[T]he evidence must . . .  show that a defendant [has] an intent to use the instrumentality or device in committing burglary." (internal quotation marks and citation omitted)); *see also State v. Lawson*, 1955-NMSC-069, ¶ 10, 59 N.M. 482, 286 P.2d 1076 (concluding that proof beyond a reasonable doubt of specific intent to use or employ a burglary tool in the commission of a crime is required to convict a defendant of possession of burglary tools). In both *Jennings* and *Barragan*, for example, the intent element was established with evidence of actual use of the tools in an attempt to gain unauthorized entry to a structure. *See Jennings*, 1984-NMCA-051, ¶ 12 (concluding that screwdriver marks on bathroom door, a broken padlock on the basement door, and eyewitness testimony of the defendant's attempt to scale a wall was sufficient evidence of intent to commit a burglary); *Barragan*, 2001-NMCA-086, ¶ 27 (holding that "use of a pry device to gain entry into [an] office evinces an intent to use the pry device in the commission of a burglary"); *see also Hernandez*, 1993-NMCA-132, ¶ 2 (holding that a defendant's purchase of a screwdriver, followed within minutes by an attempt to steal a vehicle is sufficient evidence of intent to use the screwdriver to commit a burglary).

**{23}**   A case cited by both parties, *State v. Cook*, 335 P.3d 846 (Or. Ct. App. 2014), provides useful guidance. Oregon's statute criminalizing possession of burglary tools, Or. Rev. Stat. Ann. § 164.235 (West 2003) much like our statute, requires both possession of a tool designed or used for burglary and the intent to use that tool to commit unauthorized entry. *Cook*, 335 P.3d at 848. The Oregon Court of Appeals rejected the state's argument that the jury could infer the requisite intent to use the tool to commit burglary "solely because [a defendant possessed a] burglary tool [that] has no legitimate use." *Id.* at 851. The court concluded that there must be "evidence of intent other than [the] defendant's possession of the item at issue" to avoid "collapsing the intent element of the crime into the possession element." *Id.* at 850-51. Like the Oregon statute, our Legislature's separation of the requirement for possession of a burglary tool with the conjunctive word, "and," from the additional requirement for evidence of "circumstances evincing an intent to use the same in the commission of burglary," Section 30-16-5, indicates its intent to avoid "collapsing the intent element of the crime into the possession element[,]" *Cook*, 335 P.3d at 851, and to instead require separate evidence of a defendant's intent to use the tool to commit a burglary. Section

30-16-5; *see also Stevenson v. Louis Dreyfus Corp.*, 1991-NMSC-051, ¶ 14, 112 N.M. 97, 811 P.2d 1308 (stating that conjunctive wording in a statute requires that all listed elements be present).

**{24}** The State relies on two Mississippi cases, *Fuqua v. State*, 145 So. 2d 152 (Miss. 1962), and *Henley v. State*, 136 So. 3d 413 (Miss. 2014), in support of its argument that proof of possession of a tool designed for burglary is sufficient to prove that the defendant intended to use it in "the commission of [a] burglary." Unlike the New Mexico possession of burglary tools statute, however, the Mississippi statute includes a presumption that possession of tools specifically adapted for burglary is prima facie evidence of intent to use them for that purpose. *See* Miss. Code Ann. § 97-17-35 (West 1956). Cases construing the Mississippi statute, therefore, are irrelevant to the analysis of the New Mexico burglary statute. *See State v. Off. of Pub. Def. ex rel. Muqqddin*, 2012-NMSC-029, ¶ 28, 285 P.3d 622 (cautioning against relying on authority from other states where the statutory language is different from our own, or where the statute serves a different purpose).

**{25}** For these reasons, we conclude that evidence that a particular tool has no legitimate use is insufficient on its own to establish the intent element. Additional direct or circumstantial evidence must establish a defendant's intent to use the burglary tool to commit a burglary.

**D. The Circumstantial Evidence Was Insufficient to Prove Defendant's Intent to Use the Keys to Commit a Burglary**

**{26}** The State points to the following evidence of the circumstances surrounding Defendant's arrest that it contends is sufficient to prove intent to use the "jiggle" keys to commit burglary: Defendant was in the Audi, a vehicle he did not own; the Audi was being operated without an electronic key fob; Defendant's explanation for how he came to be in the Audi was improbable; the Audi was being towed by a vehicle (the Bronco) that did not have a license plate, was being operated with a broken key, and was driven by a person who was not its registered owner; and Defendant fled the police.[2]

**{27}** We conclude, first, that these circumstances do not create a reasonable inference that Defendant made an unauthorized entry into the Audi or into the Bronco, the only two vehicles associated with Defendant's arrest. The State failed to introduce any evidence that either vehicle was stolen. There was no physical evidence of unlawful entry presented to the jury. Merely being in possession of a vehicle owned by another does not create a reasonable inference that the vehicle is stolen or that the entry was unauthorized: authorized possession of a vehicle owned by another is too common an occurrence. Defendant's statement that he could not remember his friend's name, neither alone, nor together, create a reasonable inference that Defendant had stolen the

---

[2]The State notes in its answer brief that it conceded at trial that there was no evidence that Defendant "used or intended to use the 'jiggle' or 'bump' keys to obtain unauthorized entry *to the Audi SUV*." We agree with the State's concession. We nonetheless briefly address the State's contrary argument on appeal.

Audi or entered it without authorization from its owner. The evidence that the police were unable to find the key fob or the rental paperwork for the Audi also does not support a reasonable inference of an unauthorized entry.

**{28}** As to the Bronco, there was no evidence that Defendant was ever inside the Bronco. Although Defendant's running from the police may have created a reasonable inference of consciousness of guilt, it did not support an inference that Defendant had committed a burglary, especially since Defendant was in possession of drug paraphernalia. *See State v. Trujillo*, 1981-NMSC-023, ¶ 31, 95 N.M. 535, 624 P.2d 44 ("Evidence of flight or an aborted plan of flight is admissible and relevant because it tends to show consciousness of guilt.").

**{29}** We conclude that the evidence, taken together, established only that Defendant possessed "jiggle" keys that were designed for use as burglary tools. The evidence of the circumstances surrounding Defendant's arrest does not support a reasonable inference that Defendant had the necessary intent to use the "jiggle" keys to commit a burglary of a vehicle, as required by Section 30-16-5.

**CONCLUSION**

**{30}** For the forgoing reasons, we reverse Defendant's conviction for possession of burglary tools, holding that the evidence is insufficient to establish Defendant's "intent to use the 'jiggle' keys in the commission of burglary." The reversal being for failure of proof, the cause is remanded with instructions to dismiss the charge of possession of a burglary tool. *State v. Gonzales*, 1973-NMCA-153, ¶ 7, 85 N.M. 780, 517 P.2d 1306.

**{31} IT IS SO ORDERED.**

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

**JULIE J. VARGAS, Judge**

**MEGAN P. DUFFY, Judge**