This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-37333**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**TAREEQ A. MUNIR,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**James Waylon Counts, District Judge**

Hector H. Balderas, Attorney General
Emily Tyson-Jorgenson, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**DUFFY, Judge.**

**{1}** Defendant Tareeq Munir was convicted on ten charges arising from his burglary of a pharmacy.[1] Defendant raises numerous claims of error on appeal. We conclude the

---

[1]Defendant was convicted of the following: distribution of a controlled substance, contrary to NMSA 1978, Section 30-31-22(A)(2) (2011) (Count 1); aggravated burglary (deadly weapon), contrary to NMSA 1978, Section 30-16-4(A) (1963) (Count 2); larceny (over $2,500), contrary to NMSA 1978, Section 30-16-1 (2006) (Count 3); possession of a controlled substance, contrary to NMSA 1978, Section 30-31-23(E) (2011, amended 2019) (Count 4); possession of dangerous drugs, contrary to NMSA 1978, Sections 26-1-16(E) (2013) and 26-1-26 (1987) (Count 5); possession of burglary tools, contrary to NMSA 1978,

district court erred in permitting an amendment to the charge stated in Count 1—distribution of a controlled substance—following the close of evidence and reverse Defendant's conviction on that basis. We also conclude the evidence was insufficient to support Defendant's conviction for aggravated burglary, but because the evidence was sufficient to support Defendant's conviction on the lesser included offense of burglary, we reverse and remand with instructions to enter judgment on the lesser offense. Finally, we conclude that Defendant's three convictions for criminal damage to property violate double jeopardy and remand with instructions to vacate the two misdemeanor counts. We affirm on all remaining matters.

## BACKGROUND

**{2}**     The following facts, included in the testimony of Alamogordo Police Department Deputy Jonathan Cragin, are undisputed. At 7:56 a.m. on December 14, 2013, Deputy Cragin and other officers were dispatched to Medical Arts Pharmacy due to an alarm. The pharmacy was not open for business. Officers noticed that a door to the pharmacy was damaged. Officers entered the pharmacy, where they found a large black plastic trash bag containing narcotics and other items. Officers continued searching the building and found another black plastic trash bag containing Testosterone paste, among other items. They heard "shuffling around" down a hallway, toward an office. Officers searched the office and nearby bathroom and found a disturbed ceiling tile, a footprint on a small table in the bathroom, a hammer, and a flashlight. The officers found Defendant in the ceiling and pulled him down after he refused to come out voluntarily.

**{3}**     Following a bench trial, the district court found Defendant guilty on all counts and sentenced him to a term of twenty-seven years imprisonment. Defendant appeals.

## DISCUSSION

### I.     Count 1: Distribution of a Controlled Substance

**{4}**     Defendant first challenges his conviction under Count 1 for distribution of a controlled substance in violation of Section 30-31-22(A)(2), arguing that the conviction resulted from an impermissible amendment to the indictment after the close of evidence at trial. We agree, and because charging history on this count is relevant to our analysis, we begin with a brief overview.

**{5}**     Under the original grand jury indictment, Count 1 charged Defendant with trafficking (by possession with intent to distribute) of Hydrocodone, a second degree felony, contrary to NMSA 1978, Section 30-31-20(A)(3) (2006). *See* § 30-31-20(B)(1) (stating that the first offense is punishable as a second degree felony). The original

Section 30-16-5 (1963) (Count 6); criminal damage to property (over $1,000), contrary to NMSA 1978, Section 30-15-1 (1963) (Count 7); resisting, evading, or obstructing an officer (arrest), contrary to NMSA 1978, Section 30-22-1(B) (1981) (Count 8); and two counts of criminal damage to property (under $1,000), contrary to Section 30-15-1 (Counts 9 and 10).

indictment articulated the State's theory that Defendant "did knowingly and intentionally have in his possession with the intent to transfer it to another Hydrocodone, a narcotic drug[.]"

**{6}** Nine months later, the State filed a superseding indictment that altered the charge in Count 1 from a violation of Section 30-31-20 to a violation of Section 30-31-22(A)(2), a third degree felony. Section 30-31-22(A)(2) states, in relevant part, that "it is unlawful for a person to intentionally distribute or possess with intent to distribute a controlled substance[.]" Importantly, the State also changed its charging theory for this count from possession with intent to distribute to intentional or attempted distribution. As amended, Count 1 now alleged that Defendant "did intentionally *transfer, cause the transfer of* or *attempt to transfer to another* Hydrocodone[.]" (Emphasis added.)

**{7}** The issue in this case arose at the close of evidence when Defendant moved for a directed verdict on Count 1, arguing that there was no evidence of a transfer or attempted transfer. The prosecutor responded that if this had been a jury trial rather than a bench trial, the State would have requested a jury instruction on possession with intent to distribute under UJI 14-3104 NMRA, rather than actual distribution under UJI 14-3103 NMRA, in order to conform to the evidence. The district court acknowledged that Count 1 did not describe possession with intent to distribute but reasoned that the statutory subsection it referred to, Section 30-31-22(A), included either distribution or possession with intent to distribute. On that basis, the district court concluded that Defendant was adequately on notice and had a sufficient opportunity to mount a defense to those allegations. Accordingly, the district court denied Defendant's motion and impliedly granted the State's motion to amend the charging document to conform to the evidence, though the court continued to list the charge as "distribution of a controlled substance" in the judgment and sentence.

**{8}** On appeal, Defendant argues that the district court impermissibly permitted the State to amend the indictment. Rule 5-204 NMRA governs amendments of indictments and we review the district court's application the rule de novo. *State v. Branch*, 2010-NMSC-042, ¶ 19, 148 N.M. 601, 241 P.3d 602, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37, 275 P.3d 110. The State argues that the matter should be reviewed only for fundamental error because Defendant did not object to the district court's ruling, but after reviewing the record we agree with Defendant that he had no opportunity to do so and thus, the rules of preservation do not apply. *See* Rule 12-321(A) NMRA ("If a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice the party."); *State v. Bregar*, 2017-NMCA-028, ¶ 29 n.3, 390 P.3d 212 (noting that where a party does not have the opportunity to object to a ruling or order at the time it is made, the rules of preservation do not apply).

**{9}** Rule 5-204 provides in relevant part:

> A.    Defects, errors and omissions. A complaint, indictment, or information shall not be deemed invalid, nor shall the trial, judgment, or

other proceedings thereon be stayed, arrested, or in any manner affected, because of any defect, error, omission, imperfection, or repugnancy therein which does not prejudice the substantial rights of the defendant upon the merits. The court may at any time prior to a verdict cause the complaint, indictment or information to be amended in respect to any such defect, error, omission or repugnancy *if no additional or different offense is charged* and if substantial rights of the defendant are not prejudiced.

. . . .

C.  Variances. No variance between those allegations of a complaint, indictment, information, or any supplemental pleading which state the particulars of the offense, whether amended or not, and the evidence offered in support thereof shall be grounds for the acquittal of the defendant unless such variance prejudices substantial rights of the defendant. The court may at any time allow the indictment or information to be amended in respect to any variance to conform to the evidence. If the court finds that the defendant has been prejudiced by an amendment, the court may postpone the trial or grant other relief as may be proper under the circumstances

Rule 5-204(A), (C) (emphasis added). Simply put, Rule 5-204 allows a court to amend an indictment prior to the verdict in order to conform to the evidence introduced in support of a charged offense or to include lesser included offenses, "but does not allow the [district] court to amend if there is an additional or different offense charged." *State v. Roman*, 1998-NMCA-132, ¶¶ 9, 11, 125 N.M. 688, 964 P.2d 852. As we explained in *Roman*, the distinction lies in the difference between an "amendment to an indictment" and an "amended indictment": "An 'amendment to an [indictment]' occurs when an otherwise adequate [indictment] is supplemented. An 'amendment to an [indictment]' does not include the addition of a new charge. An 'amended [indictment]' adds a new or different charge. It acts as the filing of a new instrument that supersedes the original." *Id.* ¶ 12 (citations omitted). The latter is impermissible after the close of evidence. *Id.* ¶ 9.

**{10}**  In this case, the amendment at the close of evidence had the effect of charging Defendant with a different offense. Section 30-31-22(A), which states that "[i]t is unlawful for a person to intentionally distribute or possess with intent to distribute a controlled substance[,]" defines two separate crimes: (1) intentional distribution, and (2) possession with intent to distribute. *Cf. State v. Bernard*, 2015-NMCA-089, ¶ 7, 355 P.3d 831 (explaining that New Mexico's statute codifying the crime of receiving or transferring stolen vehicles defines two separate crimes within the same statutory subsection); *State v. Wise*, 1973-NMCA-138, ¶ 3, 85 N.M. 640, 515 P.2d 644 (same).[2]

---

[2]While the State argues that the amendment was permissible because possession with intent to distribute constitutes a lesser included offense of transfer or attempt to transfer, the proposed amendment here involved two acts that are prohibited within one statute and punished at the same level. *See Bernard*, 2015-NMCA-089, ¶ 7.

This conclusion is supported by the fact that the crimes have separate jury instructions and distinct elements. When distribution is charged under Section 30-31-22(A), the jury is instructed, pursuant to UJI 14-3103, that the state must prove "[t]he defendant [transferred] [caused the transfer of] [attempted to transfer] [a controlled substance] to another." When possession with intent to distribute is charged, the jury is instructed, pursuant to UJI 14-3104, that the state must prove "[t]he defendant had [a controlled substance] in his possession" and "[t]he defendant intended to transfer it to another[.]" Given this, the change approved by the district court is the equivalent of an amended indictment that imposes a new or different charge, even though the offense occupied the same statutory subsection. *See Roman*, 1998-NMCA-132, ¶ 14.

**{11}** And like *Roman*, Defendant did not receive notice of the amended charge in time to defend against it. *Id.* ¶ 13. The amended charge included elements separate and apart from those in the superseding indictment that were not at issue during trial, and Defendant had no reason to defend against them. *Id.* ¶ 14. The lack of notice was compounded in this case by the fact that the State had abandoned a charge of possession with intent to distribute before trial and specifically changed its theory to distribution in the superseding indictment. *See State v. Gardea*, 1999-NMCA-116, ¶ 11, 128 N.M. 64, 989 P.2d 439 (stating that "it is universally held that filing an amended criminal information constitutes an abandonment of the initial information"). Under these circumstances, we conclude Defendant was prejudiced by the lack of adequate notice of the amended charge against him. *See State v. Armijo*, 1977-NMCA-070, ¶ 25, 90 N.M. 614, 566 P.2d 1152 ("To permit the jury to convict on the basis of action resulting in personal injury, by adding this charge after the evidence was concluded in a trial where personal injury was not in issue, is prejudice."). Therefore, Defendant's conviction under Count 1 is reversed.

## II.    Count 2: Aggravated Burglary

**{12}** Defendant argues that the State failed to prove the aggravating element for his aggravated burglary conviction—that he was armed with a deadly weapon. *See* § 30-16-4(A) (stating that "[a]ggravated burglary consists of the unauthorized entry of any . . . dwelling or other structure, movable or immovable, with intent to commit any felony or theft therein and the person . . . is armed with a deadly weapon"). The indictment on this charge specifically alleged that Defendant was "armed with [a] knife, a deadly weapon . . . contrary to Section 30-16-4(A)[.]"

**{13}** At trial, the State established that an officer had seized a folding knife from Defendant's belongings while he was at the hospital. The district court found that Defendant was armed with the folding knife and that it was a per se deadly weapon. Defendant argues, and the State agrees, that the folding knife was not a per se deadly weapon as defined in NMSA 1978, Section 30-1-12(B) (1963), and that there was no evidence introduced regarding Defendant's intent in carrying the knife. *See State v. Nick R.*, 2009-NMSC-050, ¶ 36, 147 N.M. 182, 218 P.3d 868 (holding that where an item is not a per se deadly weapon, the state must prove that (1) the defendant "possessed the object or instrument with the intent to use it as a weapon, and (2) the object or

instrument is one that, if so used, could inflict dangerous wounds" (internal quotation marks and citation omitted)). Consequently, we agree with Defendant that the evidence is insufficient to establish that the folding knife was a deadly weapon.

**{14}** Nonetheless, the State argues that the conviction should be affirmed because the district court found that two additional items were deadly weapons for purposes of the aggravated burglary charge—a hammer and a pry bar. Defendant points out that in the indictment, the State identified these items only as burglary tools for purposes of Count 6 (possession of burglary tools), and not as deadly weapons for the aggravated burglary charge. Defendant argues that the State's reliance on the hammer and pry bar as deadly weapons for the aggravated burglary charge amounted to an improper constructive amendment. We agree.

**{15}** As with Count 1, Defendant was not offered an opportunity to respond or object to the State's argument or the district court's ruling, and we therefore review the matter de novo. *See* Rule 12-321(A). Under Rule 5-204(C), a variance between the indictment and the evidence presented at trial is not fatal unless it prejudices the substantial rights of the defendant. In this case, "[p]rejudice affirmatively appears in this record." *Armijo*, 1977-NMCA-070, ¶ 25.

**{16}** Because the indictment identified only the knife as the deadly weapon, the district court's reliance on the hammer and pry bar had the effect of enlarging the indictment to include three deadly weapons rather than one. *Armijo*, 1977-NMCA-070, ¶ 24 (stating that "the amendment enlarged the indictment to charge the offense had been committed by three methods rather than one"). And while the indictment put Defendant's intent to use the hammer and pry bar as burglary tools at issue, his intent to use them as deadly weapons was not. *Compare State v. Montoya*, 2021-NMCA-006, ¶ 22, 482 P.3d 1285 (stating that the charge of possession of burglary tools requires proof of specific intent to use the tool in the commission of a burglary), *with Nick R.*, 2009-NMSC-050, ¶ 36 (stating that "[w]hen the object or instrument in question is an unlisted one that falls within the catchall language of Section 30-1-12(B), the jury must be instructed . . . that the defendant must have possessed the object or instrument with the intent to use it as a weapon" (internal quotation marks and citation omitted)). Consequently, at trial, Defendant had no reason to defend against the allegation that he intended to use the hammer or pry bar as weapons. Defendant suffered prejudice as a consequence of the fact-finder's reliance on the allegation, made for the first time after the close of the evidence, that he intended to use the hammer and pry bar not as burglary tools but instead as weapons. *See Armijo*, 1977-NMCA-070, ¶ 25. Under these circumstances, we cannot affirm Defendant's conviction for aggravated burglary.

**{17}** Whether Defendant was "armed with a deadly weapon" is the sole element that distinguishes Defendant's conduct as an aggravated burglary, a second degree felony, rather than a basic burglary, a fourth degree felony. *Compare* § 30-16-4 (aggravated burglary)*, and* UJI 14-1632 NMRA (stating the essential elements of aggravated burglary), *with* NMSA 1978, § 30-16-3(B) (1971) (burglary), *and* UJI 14-1630 NMRA (stating the essential elements of burglary). Because the State's evidence was

insufficient only as to the aggravating element of the burglary charge, we exercise our authority to remand for entry of judgment on the lesser included offense of burglary. *See State v. Haynie*, 1994-NMSC-001, ¶ 4, 116 N.M. 746, 867 P.2d 416 ("[A]ppellate courts have the authority to remand a case for entry of judgment on the lesser included offense . . . when the evidence does not support the offense for which the defendant was convicted but does support a lesser included offense."). In *State v. Notah-Hunter*, 2005-NMCA-074, ¶ 26, 137 N.M. 597, 113 P.3d 867, this Court discussed the direct remand rule as applied to a bench trial following our Supreme Court's holding in *State v. Villa*, 2004-NMSC-031, ¶¶ 1, 7, 136 N.M. 367, 98 P.3d 1017 (holding that remand for entry of judgment on the lesser included offense of attempt was not allowed "because a conviction of an offense not presented to the jury would deprive the defendant of notice and an opportunity to defend against that charge and would be inconsistent with New Mexico law regarding jury instructions and preservation of error"). We said that in a bench trial, jury instructions were not required on the lesser included offense and notice was sufficient when the greater offense necessarily encompasses the lesser offense, as with aggravated burglary and burglary. *Notah-Hunter*, 2005-NMCA-074, ¶ 27. And, like the defendant in *Notah-Hunter*, Defendant argued for a conviction on the lesser charge when he moved for a directed verdict. *Id.* ¶¶ 28-29. The record thus demonstrates that Defendant had sufficient notice and an opportunity to defend on the lesser charge. Accordingly, the interests of justice would not be served by remanding this case for retrial. We therefore remand to the district court for entry of judgment against Defendant for fourth degree burglary, contrary to Section 30-16-3(B).

### III.     Counts 7, 9, And 10: Criminal Damage to Property

**{18}**    Defendant was convicted of three counts of criminal damage to property based on his damage to the pharmacy building (Count 7), the phone and internet wires to the pharmacy's security system (Count 9), and an electrical meter outside of the pharmacy (Count 10). The conviction for damage to the pharmacy building in Count 7 was sentenced as a fourth degree felony based on the district court's finding that the damage exceeded $1,000, whereas the other two convictions were sentenced as petty misdemeanors. *See* NMSA 1978, § 30-15-1 (1963). Defendant argues that the three convictions violated his right to be free from double jeopardy. We review Defendant's double jeopardy claims de novo. *State v. Bernal*, 2006-NMSC-050, ¶ 6, 140 N.M. 644, 146 P.3d 289.

**{19}**    "We apply a unit-of-prosecution analysis because we are examining multiple convictions under the same statute." *State v. Swick*, 2012-NMSC-018, ¶ 33, 279 P.3d 747. For unit of prosecution cases, we engage in a two-step analysis. *State v. Gallegos*, 2011-NMSC-027, ¶ 31, 149 N.M. 704, 254 P.3d 655. "First, courts must analyze the statute at issue to determine whether the Legislature has defined the unit of prosecution." *Swick*, 2012-NMSC-018, ¶ 33. "If the unit of prosecution is clear from the language of the statute, the inquiry is complete." *Id.* "If the language is not clear, then we move to the second step, in which we determine whether a defendant's acts are separated by sufficient 'indicia of distinctness' to justify multiple punishments under the same statute." *Gallegos*, 2011-NMSC-027, ¶ 31 (internal quotation marks and citation

omitted). "If the acts are not sufficiently distinct, then the rule of lenity mandates an interpretation that the [L]egislature did not intend multiple punishments, and a defendant cannot be punished for multiple crimes." *Bernal*, 2006-NMSC-050, ¶ 14.

**{20}** Section 30-15-1 states that "[c]riminal damage to property consists of intentionally damaging any real or personal property of another without the consent of the owner of the property." "In this case, neither party argues that the unit of prosecution is clearly defined in the relevant criminal statute[]. We therefore proceed to the second step in the analysis and review whether Defendant's acts were separated by sufficient indicia of distinctness to allow for three convictions [of criminal damage to property]." *State v. Demongey*, 2008-NMCA-066, ¶ 10, 144 N.M. 333, 187 P.3d 679 (citation omitted).

**{21}** To evaluate distinctness, we look to the six factors set forth in *Herron v. State*, 1991-NMSC-012, 111 N.M. 357, 805 P.2d 624: "(1) time between criminal acts, (2) location of the victim during each act, (3) existence of any intervening events, (4) distinctions in the manner of committing the acts, (5) the defendant's intent, and (6) the number of victims." *State v. Olsson*, 2014-NMSC-012, ¶ 32, 324 P.3d 1230. Defendant argues that the only factor at issue in this case is the sixth: the number of victims. The State does not dispute this contention and has not argued that any of the other factors weigh in favor of distinctness. Consequently, we must decide whether multiple victims, without more, justify imposing multiple punishments in this case.

**{22}** The State asserts that the three items of property damaged were owned by separate entities and refers to the oft-cited proposition that "multiple victims will likely give rise to multiple offenses." *State v. Barr*, 1999-NMCA-081, ¶ 16, 127 N.M. 504, 984 P.2d 185 (quoting *Herron*, 1991-NMSC-012, ¶ 15). While New Mexico courts have emphasized the significance of this factor as applied to crimes of violence, *see Bernal*, 2006-NMSC-050, ¶ 28 (stating that "multiple victims can often give rise to multiple convictions with crimes of violence"), the State has not pointed us to any authority demonstrating that this factor has been deemed dispositive in the absence of other indicia of distinctness. Indeed, the authority cited by the State demonstrates that multiple victims alone is not enough.

**{23}** In *Barr*, for example, this Court evaluated whether multiple punishments for contributing to the delinquency of a minor were appropriate. 1999-NMCA-081, ¶ 1. While we observed that "the presence of multiple victims in this case is the most salient distinctness factor[,] which . . . will likely give rise to multiple offenses[,]" we also noted that "the presence of multiple victims is not always enough" and concluded that multiple punishments were appropriate only after determining that other distinctness factors were present. *Id.* ¶ 18 (internal quotation marks and citation omitted). We also observed that in a prior case addressing the same statute, our Supreme Court had concluded that multiple punishments were not justified where "there were no indicia of distinctness other than the pure fact of multiple victims." *Id.* ¶ 21. Similarly, in *State v. Morro*, we remarked that multiple victims were a compelling consideration for the crime of defacing tombs because "[i]njury to each gravestone causes injury to the memory of a different

person[.]" 1999-NMCA-118, ¶ 19, 127 N.M. 763, 987 P.2d 420. Nevertheless, we did not rely on the number of victims alone; instead, we concluded that *multiple* indicia of distinctness were present and supported separate punishments for each gravestone destroyed. *Id.* ¶¶ 19-20.

**{24}**   Neither *Barr* nor *Morro* address whether or when the presence of multiple victims can justify imposing multiple punishments in the absence of other indicia of distinctness. But even if the multiple-victims factor could carry the full weight of the distinctness inquiry, we do not think the facts of this case warrant separate punishments. As Defendant argues, the number of victims was not obvious under the circumstances, and Defendant "had no reason to know of any distinct ownership at the time." Moreover, the damage to the doors of the pharmacy and to the wires that controlled the electricity and security system in Defendant's case are not analogous to the injury caused by the destruction of gravestones in *Morro*. 1999-NMCA-118, ¶ 19 ("Injury to each gravestone causes injury to the memory of a different person and is likely to cause emotional distress to a different collection of living persons. That circumstance is a strong indicator that destruction to each gravestone is a distinct offense."). Under these circumstances, we hold that Defendant's acts were not sufficiently distinct to justify multiple convictions for criminal damage to property. Accordingly, we remand this case to the district court with instructions to vacate Defendant's misdemeanor convictions under Counts 9 and 10. *See Swick*, 2012-NMSC-018, ¶ 31 (holding that the general rule requires the lesser offense be vacated to cure the double jeopardy violation).

## IV.   Sufficiency of the Evidence: Count 5 (Possession Of Dangerous Drugs) and Count 3 (Larceny)

**{25}**   Defendant also argues that the evidence was insufficient to support his convictions for possession of dangerous drugs (Count 5) and larceny (Count 3). Appellate courts are highly deferential in reviewing sufficiency of the evidence claims. *State v. Slade*, 2014-NMCA-088, ¶ 13, 331 P.3d 930. "All evidence is viewed in the light most favorable to the state, and we resolve all conflicts and make all permissible inferences in favor of the . . . verdict." *Id.* (alterations, internal quotation marks, and citation omitted).

**{26}**   Defendant first contends that there was not sufficient evidence to support the "possession" element of his conviction for possession of dangerous drugs (topically applied Testosterone) under Section 26-1-16(E). A person possesses a controlled substance "when he knows it is on his person or in his presence, and he exercises control over it." UJI 14-3130 NMRA. Possession may also be constructive "when a [person] has knowledge of and control over the drugs." *State v. Chandler*, 1995-NMCA-033, ¶ 10, 119 N.M. 727, 895 P.2d 249, *holding modified on other grounds by State v. Vargas*, 2007-NMCA-006, ¶ 14, 140 N.M. 864, 149 P.3d 961.

**{27}**   Our review of the record reveals sufficient evidence that Defendant possessed the Testosterone. The Testosterone was found in a black trash bag inside the pharmacy and the owner of the pharmacy testified that the trash bag was not owned by the

pharmacy. This evidence allows for a reasonable inference that Defendant placed the Testosterone in the black trash bag. Moreover, in his interview with police, Defendant admitted to taking the Testosterone for his personal use because he claimed to need it. This evidence was sufficient to support Defendant's conviction under Count 5 for possession of dangerous drugs.

**{28}**　Defendant also argues that the evidence was insufficient to sustain his larceny conviction because there was no evidence that he "carried away" the items from the pharmacy, given that they never left the building. *See* UJI 14-1601 NMRA (requiring, for conviction of larceny, that a defendant "took and carried away" property). Contrary to Defendant's argument, the State was not required to prove that the drugs left the building for the district court to convict Defendant of larceny. *See* UJI 14-1603 NMRA (" 'Carried away' means moving the property from the place where it was kept or placed by the owner."). We affirm Defendant's larceny conviction under Count 3.

## V.　The District Court Did Not Err in Admitting Defendant's Statement

**{29}**　The police interviewed Defendant after apprehending him at the pharmacy. At the beginning of the interview, Defendant was advised of and waived his rights under *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Defendant proceeded to make several incriminating statements.

**{30}**　Defendant filed a motion to suppress his statements. The district court denied the motion, finding that "from an objective standard, the Defendant understood what was being said to him, [and was] responding in an appropriate and coherent fashion to the questions that were asked." Defendant raises two issues on appeal. First, he argues that there was no valid waiver of his *Miranda* rights, and second, that any statements he made to police were not voluntary.

> On appeal of a district court's decision to deny a motion to suppress inculpatory statements, we accept the factual findings of the district court unless they are clearly erroneous, and view the evidence in the light most favorable to the district court's ruling. The ultimate determination of whether a valid waiver of *Miranda* rights has occurred, however, is a question of law which we review de novo.

*State v. Gutierrez*, 2011-NMSC-024, ¶ 7, 150 N.M. 232, 258 P.3d 1024 (alteration, internal quotation marks, and citation omitted).

**{31}**　Defendant argues that his *Miranda* waiver was not valid because he was intoxicated.[3] Defendant contends that the Oxycodone he received at the hospital "would impair a person's faculties" and that, prior to his arrest, he had also taken OxyContin,

---

[3]Defendant argues in a heading that the injury he suffered also rendered his waiver involuntary, but he does not develop this argument and therefore, we do not consider it. *See Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 70 ("This Court has no duty to review an argument that is not adequately developed.").

Percocet, Adderall, and Prozac. Defendant relies on *State v. Bramlett* for the proposition that evidence of extreme intoxication is inconsistent with a knowing, intelligent, and voluntary waiver of rights. 1980-NMCA-042, ¶ 20, 94 N.M. 263, 609 P.2d 345, *overruled on other grounds by Armijo v. State Through Transp. Dep't*, 1987-NMCA-052, 105 N.M. 771, 737 P.2d 552. At issue in *Bramlett* was a purported waiver of a defendant's *Miranda* rights after police observed the defendant to be staggering, to have slurred speech and difficulty walking, as well as a strong alcoholic smell and a breath alcohol concentration of 0.23. *Id.* Police detained the defendant on the grounds that he was too intoxicated to be released. *Id.* ¶ 21. They did so under the authority of a statute that allowed such detention where the detainee's "mental and physical functioning is so substantially impaired that he has become unable to care for his own safety." *Id.* (omissions, internal quotation marks, and citation omitted). In concluding that there was no valid waiver of the defendant's *Miranda* rights, we reasoned that

> [i]f [the] defendant was so intoxicated that in the judgment of these witnesses he could not function safely, it is a contradiction of their own testimony and actions to believe that their opposing assessment of his ability to understand constitutes sufficient evidence that the statements and the waivers were given knowingly and voluntarily.

*Id.*

**{32}** Conversely, in *State v. Wyatt B.*, 2015-NMCA-110, 359 P.3d 165, we held that there was a valid *Miranda* waiver despite evidence of the defendant's voluntary intoxication. In that case, the defendant exhibited difficulty opening the door to his vehicle, spoke in incomplete sentences, and admitted to being "pretty buzzed." *Id.* ¶ 22 (internal quotation marks omitted). In addition, the defendant performed poorly on field sobriety tests and had a breath alcohol concentration of 0.14 and 0.15 percent. *Id.* In reaching our conclusion, we noted that the defendant seemed to understand the deputy's questions and that, in contrast to *Bramlett*, there was no evidence that the defendant could not care for his own safety. *Wyatt B.*, 2015-NMCA-110, ¶ 23. We also observed that the defendant's breath alcohol concentration level was markedly lower than that of the defendant in *Bramlett*. *Wyatt B.*, 2015-NMCA-110, ¶ 23.

**{33}** Defendant's alleged intoxication in this case bears no similarity in degree to the level of *Wyatt B.* or *Bramlett.* Our own review of the video and audio recordings confirms the district court's findings that Defendant understood what was being said to him and responded appropriately and coherently. *See Gutierrez*, 2011-NMSC-024, ¶ 7. Because there is no indication that Defendant's mental faculties were actually impaired, "we disagree that the evidence in this case compels a determination that [the defendant] was extremely intoxicated and lacked the capability to understand and waive his statutory right." *Wyatt B.*, 2015-NMCA-110, ¶ 23.

**{34}** Defendant also argues that his post-waiver statements were not voluntary. This is a separate question from the validity of the *Miranda* waiver. *See State v. Coleman*, 2011-NMCA-087, ¶ 15, 150 N.M. 622, 264 P.3d 523. "New Mexico defines

voluntariness as 'freedom from official coercion.' " *State v. LaCouture*, 2009-NMCA-071, ¶ 11, 146 N.M. 649, 213 P.3d 799 (citation omitted). "[W]e analyze the totality of the circumstances, but an involuntary statement must also have been made in response to some 'element of official overreaching' by the police. Examples of official overreaching include intimidation, coercion, deception, assurances, or other police misconduct that constitutes overreaching." *Id.* (internal quotation marks and citation omitted).

**{35}** Defendant does not argue that any such overreaching occurred in this case. Rather, he argues that "[t]he use of [Defendant]'s confession violates due process where the officer knew he was injured and on pain medication." This argument is contrary to our precedent: "inculpatory statements made as a result of a mental or physical condition are not sufficient to render the statements involuntary in the absence of a causal relationship between the physical or mental condition and police misconduct." *Bregar*, 2017-NMCA-028, ¶ 20. Defendant has not identified any police misconduct and has thus failed to demonstrate that his *Miranda* waiver was involuntary.

**{36}** For all of these reasons, we conclude the district court did not err in denying Defendant's motion to suppress.

## VI.    Defendant's Remaining Arguments

**{37}** We briefly address Defendant's final three arguments. First, Defendant argues that his counsel was ineffective. Defendant contends that his counsel

> failed to communicate with [Defendant] and failed to file motions [Defendant] requested, including a motion to quash the indictment and a motion to challenge probable cause. He failed to move for a mistrial, failed to challenge the illegal search and seizure, failed to challenge the vindictive prosecution by the State and failed to challenge the judicial misconduct by the judge. Additionally, trial counsel failed to visit [Defendant] in jail to prepare for trial and failed to conduct pre-trial interviews of the witnesses.

Because the record does not contain all of the facts necessary for a full determination on these issues, Defendant's ineffective assistance of counsel claim is more properly brought through a habeas corpus petition. *State v. Paredez*, 2004-NMSC-036, ¶ 22, 136 N.M. 533, 101 P.3d 799 ("[W]e have held when the record does not contain all the facts necessary for a full determination of the issue, an ineffective assistance of counsel claim is more properly brought through a habeas corpus petition[.]" (internal quotation marks and citation omitted)).

**{38}** Defendant concedes that his remaining arguments—that his convictions are the result of prosecutorial vindictiveness and judicial bias—must be reviewed for fundamental error. After a thorough review of the record, we conclude that Defendant has not demonstrated any fundamental error on these points.

**CONCLUSION**

**{39}** We reverse Defendant's convictions for Count 1 (distribution of a controlled substance) and Count 2 (aggravated burglary). We remand with instructions to enter judgment on a charge of burglary, as well as to vacate Defendant's two misdemeanor convictions for criminal damage to property under Counts 9 and 10, and for resentencing.

**{40} IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**ZACHARY A. IVES, Judge**